# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, | ) | Case No. 09-17236 |
| | ) | (Proposed Jointly Administered) |
| Debtor. | ) | |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing Date: May 14, 2009 at 10:00 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **May 14, 2009 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Carol A. Doyle in the courtroom usually occupied by her, Courtroom No. 742, in the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois, or before any judge who may be sitting in his place or stead, and shall then and there present the **Emergency Motion For An Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection and (II) Approving The Form And Method of Notice Of, And Scheduling The Final Hearing On The Use of Cash Collateral**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: May 12, 2009                              THE KIRK CORPORATION AND ITS
                                                 AFFILIATE DEBTORS


                                                 By:  /s/ David L. Kane
                                                        One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{05919: 209: 00439475.DOC : }

## CERTIFICATE OF SERVICE

I, David L. Kane, an attorney, certify that on May 13, 2009, I caused copies of the attached **Notice of Motion** and **Emergency Motion For An Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection and (II) Approving The Form And Method of Notice Of, And Scheduling The Final Hearing On The Use of Cash Collateral**, to be served (i) via electronic notice on the parties noted in the Court's CM/ECF system, (ii) via overnight mail on the Debtors' Consolidated List of 30 Largest Unsecured Creditors filed in these Chapter 11 cases, and (iii) upon the following parties as noted:

**Via Email and Overnight Mail**
Joel Walker, Esq.
*Counsel to JPMorgan Chase, As Agent*
Duane Morris LLP
600 Grant Street, Suite 5010
Pittsburgh, PA 15219-2811
Email: JMWalker@duanemorris.com

**Via Overnight Mail**
William T. Neary (U.S. Trustee)
Office of the U.S. Trustee, Region 11
219 South Dearborn Street
Room 873
Chicago, IL 60604


                              s/ David L. Kane

{05919: 209: 00439475.DOC : }

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, | ) | Case No. 09-17236 |
| | ) | (Proposed Jointly Administered) |
| Debtor. | ) | |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing Date: May 14, 2009 at 10:00 a.m. |

**EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING
USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION
AND (II) APPROVING THE FORM AND METHOD OF NOTICE OF, AND
SCHEDULING, THE FINAL HEARING ON THE USE OF CASH COLLATERAL**

The Kirk Corporation and nine of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, "Kirk" or the "Debtors")[1], hereby move this Court (the "Motion") for the following:

(a) That the Court conduct a preliminary hearing to consider the Motion (the "Interim Hearing") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

(b) That after the Interim Hearing, the Court enter an interim order, in a form substantially the same as that set forth in **Exhibit A** to this Motion (the "Interim Cash Collateral Order"), authorizing the Debtors, pursuant to sections 363 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rule 4001(b) of the Bankruptcy Rules, *inter alia*, to use the Cash Collateral[2] of the Lenders to fund the expenses

---

[1] The Debtors are the following companies: The Kirk Corporation; Apple Creek Estates, LLC; Beacon Pointe West, LLC; Bloomfield Estates, LLC; Laurel Meadow, L.L.C.; The Lindens Venture, L.L.C.; Rockwell Place, LLC; Stonegate Village, LLC; Wing Pointe North, L.L.C; and Westland, LLC. Four affiliates of Kirk are currently non-debtors: Bloomfield West, L.L.C; Freeman Road Development, LLC; Rockwell Utilities, LLC; and Suncrest, L.L.C.

[2] Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Interim Cash Collateral Order.

{05919: 209: 00436495.RTF :5 }

set forth in the Operating Budget upon the terms and conditions set forth in the Interim Cash Collateral Order and to grant adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to the Lenders pending a final hearing on this Motion; and

(c)   That the Court schedule a final hearing (the "Final Hearing") to consider entry of a final Cash Collateral order (the "Final Order") authorizing on a final basis, *inter alia*, the use of the Lenders' Cash Collateral and the grant of adequate protection. In support of this Motion, the Debtors rely on the Declaration of John P. Carroll in Support of Chapter 11 Petitions and First Day Orders, filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.   On May 12, 2009, each of the Debtors filed its respective voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), commencing the above-captioned Chapter 11 cases. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(c) and 1108 of the Bankruptcy Code.

2.   No creditors' committee has been appointed in these cases.

3.   This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (M).

4.   The bases for the relief requested herein are sections 361, 362(d)(3), 363 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

5. The Kirk Corporation was founded in 1978 as a production homebuilder. Currently, Kirk employs approximately 20 employees. Kirk's principal office is located in Streamwood, Illinois.

6. Kirk, an Illinois corporation, is the sole member of 11 limited liability companies and is the manager and one of the members of 2 limited liability companies. Nine of these limited liability companies also are Debtors herein. One hundred percent (100%) of the stock of the holding company, Kirk, is owned by the Kirk Corporation Stock Option Plan, pursuant to two (2) transactions; the first of which occurred in 1998 and the second of which occurred in 2002. Thus, the ultimate owners of all the Debtors are all of the employees of the Debtors.

7. The Debtors together currently have (i) five active residential developments in Bolingbrook, Hoffman Estates, Lakemoor, and Woodstock, (ii) five residential developments in Aurora, Bolingbrook, Huntley (unincorporated), New Lenox and Streamwood where construction of homes is complete, (iii) commercial property in Woodstock, and (iv) two unentitled parcels which are zoned for commercial use in Elburn (unincorporated) and Huntley (unincorporated). As of the Petition Date, the Debtors' aggregate assets total approximately $96,847,300 and the Debtors' aggregate liabilities total approximately $64,537,80, on a consolidated basis.

8. The Debtors' operational and profitability problems are principally due to the sharp and prolonged decline in the Chicago area homebuilding market. In 2006 and 2007, the Debtors built 328 homes and 305 homes, respectively, and had gross revenues of $113,310,092 and $105,898,302, respectively. In 2008 the Debtors built only 78 homes with gross revenues of $24,711,670.

9. The Debtors acknowledge that from time to time prior to the Petition Date, Kirk borrowed money and received other financial accommodations from the JPMorgan Chase Bank, N.A., a national banking association (successor by merger to Bank One NA, with its main office in Chicago, Illinois), as agent ("Agent") for the Debtors' prepetition secured lenders (collectively, the "Lenders") under that certain Amended and Restated Borrowing Base Revolving Line of Credit Agreement dated as of August 25, 2006 (as amended, the "Credit Agreement"), and incurred additional obligations in connection therewith, including without limitation, obligations for payment or reimbursement of certain of the Agent's fees, costs and expenses.

10. The Debtors acknowledge that their obligations under the Credit Agreement ("Obligations") are secured by security interests and liens in and against the majority of the assets of the Debtors in favor of the Agent on behalf of itself and the Lenders (the "Prepetition Collateral"). The Debtors further acknowledge, that the Obligations and the security interests and liens in and against the Prepetition Collateral securing the Obligations are evidenced by certain loan, security and other collateral agreements between and among the Agent, on behalf of itself and the Lenders, and the Debtors, as they may have been amended from time to time, certain promissory notes executed by the Debtors in favor of the Lenders, and other agreements, documents, guaranties and instruments entered into, delivered or otherwise related to the Obligations and the Prepetition Collateral (collectively, the "Lender Agreements").

11. Among the assets that are <u>not</u> Prepetition Collateral are (a) the real property assets of Rockwell Utilities, LLC, an Illinois limited liability company and affiliate of the Debtors, which real estate assets have a value of not less than $2.5 million (the "Utility Company Real Estate") and (b) certain bank accounts of the Debtors.

12. The Debtors acknowledge that the Agent has perfected its security interests and

liens in and against the Prepetition Collateral by possession thereof or by the filing of financing statements and other documents as applicable in the appropriate filing and recoding offices.

13. The Debtors further acknowledge, that as of the opening of business on the Petition Date, (a) the aggregate outstanding principal amount of Loans included in the Obligations was $48,069,309; (b) the aggregate outstanding amount of accrued and unpaid interest and fees included in the Obligations was $549,847; (c) the aggregate outstanding undrawn amount of Letters of Credit included in the Obligations was $3,411,935; and (d) the total amount of the Obligations outstanding as of the Petition Date was approximately $52,031,091.

14. Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, certain cash and cash equivalents held by the Debtors as of the commencement of the above-captioned bankruptcy cases (the "Cases") and the proceeds, products, offspring, rents or profits of the Prepetition Collateral received by the Debtors after the commencement of the Cases constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and in which the Agent on behalf of itself and the Lenders has an interest within the meaning of sections 363(c)(2) and 363(e) (the "Cash Collateral").

## RELIEF REQUESTED

15. By this Motion, the Debtors seek, among other things:

(a) authorization under Bankruptcy Code sections 361, 362(d)(3)(B), 363(c), and 363(e) to use the Cash Collateral and provide adequate protection to the Lenders with respect to the Debtors' use of such Cash Collateral and other diminution in value of the Prepetition Collateral;

(b) the continued accrual and payment of interest on the Loans and Fees on the

    Letters of Credit at the non-default rate and pursuant to the terms applicable under the Lender Agreements (without giving effect to any defaults thereunder) with such payments to be deemed made from the net proceeds of residential property and other real property; and

(c) the scheduling of the Final Hearing on this Motion and the establishment of notice procedures in respect of the Final Hearing to consider entry of the Final Order approving the use of Cash Collateral and the granting of adequate protection to the Lenders on a final basis.

## BASIS FOR RELIEF

16. The Debtors have determined that the use of the Cash Collateral is necessary for the Debtors to maintain sufficient liquidity so that they may continue to operate their businesses in chapter 11 in the ordinary course of business, complete pending sales of residences, market and sell other standing inventory, and be positioned to perform under existing and future contracts for the construction of homes. Without immediate access to the Cash Collateral, the Debtors will not be able to pay the ongoing costs of running their business and administering their estates, the result of which will be the irreparable damage to the value of the Debtors and thus the value of the Lenders' Prepetition Collateral. Indeed, the Debtors have determined that if they are not allowed the use of the Cash Collateral, they could not maintain their businesses, and their cases likely would be converted to cases under chapter 7 of the Bankruptcy Code in relatively short order.

17. Access to the Cash Collateral will provide the Debtors' customers, vendors, and subcontractors with the requisite security that the Debtors will be able to continue conducting their businesses in the ordinary course without interruption.

18. Moreover, access to the Cash Collateral will enable the Debtors to further maximize the value of their assets for the Lenders, their estates and their creditors.

19. Section 363(c)(2) of the Bankruptcy Code provides that a debtor "may not use, sell, or lease cash collateral ... unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Additionally, section 363(e) provides that, on request of an entity that has an interest in cash collateral to be used, the court may condition such use as is necessary to provide adequate protection of such interest. The Debtors request that the Court approve its use of the Cash Collateral to pay wages, salaries, operating expenses, and certain professional fees incurred during the pendency of these cases, all as reflected in the Operating Budget.

20. Bankruptcy Rule 4001(b) provides that if, as here, a debtor seeks to use cash collateral during the 15-day period following the filing of a motion requesting authorization to use such cash collateral, the court may authorize the use of "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending final hearing." Bankruptcy Rule 4001(b)(2). After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business.

21. The Debtors' request for interim use of Cash Collateral pursuant to the Interim Cash Collateral Order is necessary to avoid immediate and irreparable harm to the Debtors. To ensure a smooth transition into chapter 11 and the maximization of the value of the Debtors' assets, it is imperative that the Debtors be authorized to use Cash Collateral pursuant to section 363 of the Bankruptcy Code to avoid immediate and irreparable harm to the Debtors' estates. Absent the use of Cash Collateral for their continuing business operations, the Debtors will be

unable to fund their operating expenses in the ordinary course, which would likely result in a shutdown of operations from which they could not recover. Consequently, if interim relief is not obtained, the Debtors' attempt to sell their assets may well be doomed at the outset, to the detriment of the Debtors' estates and creditors.

22. Moreover, without immediate access to postpetition financing, the Debtors expect to suffer an acute cash shortage in the coming days that threatens their ability to maintain operations in the short term - even through the date of the Final Hearing. Accordingly, the Debtors request that the Court grant the relief requested herein on an interim basis, subject to final approval at the Final Hearing.

## SUMMARY OF CERTAIN PROVISIONS IN COMPLIANCE WITH LOCAL RULE 4001-2

23. Pursuant to Local Rule 4001-2, the Debtors highlight the following provisions of the Interim Cash Collateral Order and the Final Order:

| REQUISITE PROVISION | LOCATION IN ORDER AND SUMMARY OF TERMS | JUSTIFICATION |
|---|---|---|
| Local Rule 4001-(A)(2)(a): Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the pre-petition secured creditors (i.e., clauses that secure pre-petition debt by post-petition assets in which the secured creditor would not otherwise have a security interest by virtue of its pre-petition security agreement or applicable law. | None | Not applicable |
| Local Rule 4001-(A)(2)(b): Provisions or findings of fact | The Debtors acknowledge in ¶¶ 4 and 6 of the | The Debtors cannot operate, reorganize, or preserve the |

| | | |
|---|---|---|
| that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or debt or the waiver of claims against the secured creditor without first giving parties in interest at least 75 days from the entry of the order and the creditors' committee, if formed at least 60 days from the date of its formation to investigate such matters. | Interim Cash Collateral Order that the Obligations are secured by security interests and liens in and against a substantial majority of the property of the estates of the Debtors in favor of the Agent on behalf of itself and the Lenders.<br><br>The Debtors acknowledge in ¶ E of the Interim Cash Collateral Order the aggregate outstanding principal amount of Loans included in the Obligations, the aggregate outstanding amount of accrued and unpaid interest included in the Obligations, the aggregate outstanding undrawn amount of letters of credit included in the Obligations, and the total amount of the Obligations outstanding.<br><br>The Debtors acknowledge in ¶ F of the Interim Cash Collateral Order that the Obligations and the security interest and liens in and against the Prepetition Collateral securing the Obligations are evidenced by the Lender Agreements.<br><br>The Debtors acknowledge in ¶ G of the Interim Cash Collateral Order that the Agent has perfected its security interests and liens in and against the | value of its assets without the use of Cash Collateral. |

| | Prepetition Collateral | |
|---|---|---|
| Local Rule 4001-2(A)(2)(c): Provisions that seek to waive any rights the estate may have under § 506(c) of the Bankruptcy Code. | None | Not applicable |
| Local Rule 4001-2(A)(2)(d): Provisions that immediately grant to the pre-petition secured creditor liens on the debtor's claims and causes of action arising under §§ 544, 545, 547, 548, and 549 of the Bankruptcy Code. | Paragraph 4(d) of the Interim Cash Collateral Order grants security interests in, and liens on, the Debtors Avoidance Actions, but only to the extent that such use causes any diminution in the value of the Prepetition Collateral. | The Lenders' liens on avoidance actions are only to the extent that such use causes any diminution in the value of the Prepetition Collateral. |
| Local Rule 4001-(A)(2)(e): Provisions that deem pre-petition secured debt to be post-petition debt or that use post-petition loans from a pre-petition secured creditor to pay part or all of that secured creditor's debt, other than as provided in § 552(b) of the Bankruptcy Code. | None | Not Applicable |
| Local Rule 4001-(A)(2)(f): Provisions that provide treatment for the professionals retained by a committee appointed by the United States Trustee different from that provided for the professionals retained by the debtor with respect to a professional fee carve-out and provisions that limit the committee counsel's use of the carve-out. | None | Not Applicable |
| Local Rule 4001-(A)(2)(g): Provisions that prime any secured lien, without the consent of that lienor. | None | Not Applicable |
| Local Rule 4001-(A)(2)(h): A declaration that the order does not impose lender | None | Not Applicable |

| | | |
|---|---|---|
| liability on any secured creditor. | | |
| Local Rule 4001-(A)(2)(i): Provisions that grant the lender expedited relief from the automatic stay in § 362 of the Bankruptcy Code, or relief from the automatic stay without further order of the court. | None | Not Applicable |

24.  The Debtors' use of Cash Collateral shall be as set forth in the Operating Budget, which also contains the maximum amount of such use. Under the Interim Cash Collateral Order, the Debtors will be deemed continued initially to make interest payments (from the allocations of property sales set forth in Recital ¶¶ M(ii) and M(iii)) to the Lenders on the full outstanding principal balance at the "applicable nondefault contract rate" within the meaning of section 362(d)(3)(B)(ii) of the Bankruptcy Code. This will be accomplished by providing the Lenders with seventy percent (70%) of the net proceeds of residential home sales, plus the grant of the other Postpetition Collateral set forth in Paragraph 25 below.

25.  As further protection for the interests of the Agent and the Lenders in the Cash Collateral and the Prepetition Collateral, the Interim Cash Collateral Order and Final Order grant the Postpetition Collateral to the Agent on behalf of itself and the Lenders with the same relative priority as provided under the Lender Agreements. The "Postpetition Collateral" includes:

(a)  seventy percent (70%) of the net proceeds of all residential home sales that close postpetition; and

(b)  a lien on all of the Utility Company Real Estate; and

(c)  forty percent (40%) of the net proceeds of the sale by Freeman Road Development, LLC of approximately 164 acres of real property on Freeman Road

in unincorporated Kane County, Illinois (the "Freeman Road Property"); and

(d) additional security interests and liens against (i) any actions to avoid any transfers or payments that occur after the Petition Date, (ii) any actions to return retainers held by the Debtors' professionals, (iii) any actions to avoid transfers of property on which the Agent has a lien or security interest; and (iv) on entry of the Final Order, all other Avoidance Actions, but in any event only to the extent of the amount of Cash Collateral used by the Debtors and the amount of other diminution in the value of the Prepetition Collateral.

26. The security interests and liens of the Agent and the Lenders in the Postpetition Collateral granted under the terms of the Initial Cash Collateral Order and Final Order are senior to the rights of all entities, including without limitation, the Debtors and any successor trustee in these or any subsequent cases under the Bankruptcy Code, subject only to statutory or other liens existing prior to the commencement of these Cases, if any, that are valid, perfected and non-avoidable with priority over the security interests and liens of the Agent in and against the Prepetition Collateral or Postpetition Collateral; provided, however, that nothing herein shall be construed to bar the Debtors from seeking additional financing and granting first priority liens to such secured lenders on the homes constructed by the Debtors with such additional financing.

27. The security interests, liens and priority claims granted to the Agent and the Lenders in the Interim Cash Collateral Order and the Final Order shall have priority over all costs and expenses of administration incurred and shall have priority over any and all unsecured claims and expenses in these Cases, whether incurred or arising prior or subsequent to the entry of this Interim Cash Collateral Order, except for: (a) claims for fees payable to the United States Trustee under 28 U.S.C. § 1930(a); (b) allowable unpaid fees and expenses of professionals

retained by the Debtors with Court approval accrued through the date authority to use Cash Collateral terminates under the terms of the Interim Cash Collateral Order or Final Order not exceeding $500,000.00 in the aggregate, or such other additional amounts as the Debtors and the Agent may agree or the Court may approve (the "Debtors' Professionals Carve-Out"), provided that such fees and expenses are not incurred for services in connection with challenging the claim of the Agent and the Lenders or challenging any security interests or liens of the Agent or investigating, commencing or prosecuting any claim or cause of action against the Agent based in whole or in part upon facts or circumstances existing prior to the Petition Date; (c) severance payments for Debtors' employees to the extent such payments are approved by a final order of this Court; and (d) payment of obligations (other than to the Debtors' professionals) incurred under the Operating Budget, and due and owing, prior to the occurrence of a Termination Event.

28. Under the Interim Cash Collateral Order and Final Order, the following constitute "Termination Events":

(a) entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;

(b) entry of an order dismissing or suspending any of the Cases;

(c) entry of an order in any of the Cases appointing a trustee under section 1104 of the Bankruptcy Code;

(d) entry of an order in any of the Cases appointing an examiner under section 1104(b) with powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code;

(e) the payment by the Debtors, without the Agent's written consent in each instance, of aggregate disbursements on a cumulative basis for the period from Monday of

the calendar week after which these Cases were filed through the end of each calendar week thereafter, taking each such period as one accounting period, in excess of, respectively, 115% of such disbursements projected to be made in the Operating Budget for each such respective period thereafter;

(f) except as otherwise permitted by the Agent in writing in each instance, the Debtors receive aggregate cash receipts on a cumulative basis for the period from Monday of the calendar week in which these Cases were filed through the end of each calendar week thereafter, taking each such period as one accounting period, in an amount less than (i) for each such period ending, respectively, May 22, and May 29, 2009, 50% of such receipts projected to be received in the Operating Budget, and (ii) 75% of such receipts projected to be received in the Operating Budget;

(g) the payment by the Debtors without the Agent's prior written consent in each instance of any expenditure that is not reflected as an expense category in the Operating Budget;

(h) any of the Debtors breach or otherwise fail to abide by any of the terms or provisions of the Interim Cash Collateral Order or Final Order; or

(i) the Debtors modify their existing cash management system without the prior express written consent of the Agent in each instance.

## NO PRIOR REQUEST

29. No prior motion for the relief requested herein has been made to this Court in these bankruptcy cases.

## NOTICE

30. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) JPMorgan Chase, N.A., as Agent for the prepetition Lenders, and its counsel; and (c) the Debtors' thirty (30) largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter the Interim Cash Collateral Order; (ii) schedule the Final Hearing; and (iii) grant such other relief as the Court may deem just and appropriate.

Dated: May 12, 2009

Respectfully submitted,

**THE KIRK CORPORATION
AND ITS AFFILIATE DEBTORS**

By: /s/ Forrest B. Lammiman
      One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)