# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, *et al.*, | ) | Case No. 09-17236 |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing Date: June 2, 2009 at 9:30 a.m. |

## NOTICE OF MOTION

     PLEASE TAKE NOTICE that on **June 2, 2009 at 9:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Eugene R. Wedoff in the courtroom usually occupied by him, Courtroom No. 744, in the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois, or before any judge who may be sitting in his place or stead, and shall then and there present the **Motion for Entry of an Order Establishing Procedures for the Closing of Residential Home Sales in the Ordinary Course and the Resolution and Payment of Lien Claims**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: May 28, 2009

                                                           **THE KIRK CORPORATION AND ITS AFFILIATED DEBTORS**

                                                           By: /s/ David L. Kane

                                                                 One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{05919: 210: 00442409.DOC :2 }

## CERTIFICATE OF SERVICE

      I, David L. Kane, an attorney, certify that on May 28, 2009, I caused copies of the attached **Notice of Motion** and **Motion for Entry of an Order Establishing Procedures for the Closing of Residential Home Sales in the Ordinary Course and the Resolution and Payment of Lien Claims** to be served (i) via electronic mail on the parties appearing on the Court's CM/ECF notice list and (ii) via First Class U.S. Mail, postage pre-paid, upon the parties set forth on the attached Service List.

                                            s/ David L. Kane

## SERVICE LIST

| | | |
|---|---|---|
| Donald Kirk<br>1024 Hibbard Rd.<br>Wilmette, IL 60091 | David Kirk<br>5336 N Glenwood Rd.<br>Chicago, IL 60640 | Carrie Reyes<br>Cole Taylor Bank<br>225 W. Washington St. 9th Floor<br>Chicago, IL 60606 |
| Lenny Szarek Inc.<br>c/o Jennifer L. Johnson<br>Zanck, Coen & Wright<br>40 Brink St.<br>Crystal Lake, IL 60014 | Karen Rust<br>Coleman Floor Company<br>1930 N. Thoreau Dr. #100<br>Schaumburg, IL 60173 | Justin Avey<br>Service Drywall & Decorating<br>47 West Irving Park Rd.<br>Roselle, IL 60172 |
| Donald Walsh<br>Professional Plumbing, Inc.<br>1435 S. Barrington Rd.<br>Barrington, IL 60010 | SCE Unlimited, Inc.<br>Brendan G. Best<br>Schafer and Weiner, PLLC<br>40950 Woodward Ave., Ste. 100<br>Bloomfield Hills, MI 48304 | R&D Thiel Inc.<br>c/o Gary Leydig<br>Riordan, Fulkerson, Hupert & Colema<br>30 North LaSalle St, Suite 2630<br>Chicago, IL 60602 |
| Tracey Blanchard<br>Blanchard Electrical Contractors, Inc.<br>920 W. Prairie Dr., Ste. I<br>Sycamore, IL 60178 | Sally Gange<br>Stock Building Supply<br>1331 Davis Rd.<br>Elgin, IL 60123 | Max Ghezzi<br>Ghezzi Masonry Construction<br>P.O. Box 5152<br>Lansing, IL 60438 |
| Gary Doles<br>Tempco Heating & Air Conditioning Company<br>3050 N. Kennicott<br>Arlington Heights, IL 60004 | Mike Reagen<br>Alright Concrete<br>1500 Ramblewood Dr.<br>Streamwood, IL 60107 | Glen Nissen<br>Art Nissen & Son Landscaping, Inc.<br>P.O. Box 459<br>Hampshire, IL 60140 |
| Larry Boesso<br>Patriot Concrete & Asphalt<br>10S312 Schoger Dr.<br>Naperville, IL 60564 | David Solari<br>CCR Tops Inc.<br>2482 Technology Dr.<br>Elgin, IL 60123 | Bob Shearer<br>Northwest Insulation<br>1615 Dundee Ave., Ste. 1<br>Elgin, IL 60120 |
| Tom Koss<br>Inland Electric Corp.<br>611 W. Jefferson<br>Shorewood, IL 60431 | Jim Link<br>Jim Link Services, Inc.<br>431 Scotland Rd., Ste. B<br>Lakemoor, IL 60051 | Larry Boesso<br>J B Concrete Contractors Inc.<br>10S312 Schoger Dr., Unit B<br>Naperville, IL 60564 |

{05919: 210: 00442409.DOC :2 }

| | | |
|---|---|---|
| Martin T. Burke<br>Mackie Consultants<br>9575 W. Higgins Rd. #500<br>Rosemont, IL 60018 | Michael E. Bellar,<br>President<br>Harry Wolsky, Inc. of IL<br>547 Motherwell Ave.<br>P.O. Box 967<br>Logan, OH, 43138 | Tim Cote<br>Tim Cote Inc.<br>1075 Manito Trail<br>Algonquin, IL 60102 |
| Frank Zubricki<br>Professional Drywall &<br>Decorating LLC<br>3135 W. 59th St.<br>Chicago, IL 60629 | Tom Manning<br>T. Manning Concrete, Inc.<br>11410 Kreutzer Rd.<br>Huntley, IL 60142 | Mark Wilson<br>Wilkor Construction Inc.<br>700 D Willow Lane<br>Dundee, IL 60118 |
| Jordan Harris<br>Whirlpool<br>1904 Country Dr.<br>Grayslake, IL 60030 | Larry Hill<br>Ryan Incorporated Central<br>P.O. Box 206<br>Janesville, IL 53547 | Earl Sund<br>Sund Masonry<br>116 Birch Lane<br>Cary, IL 60013 |
| Roman Sukley<br>Office of the U.S. Trustee<br>219 South Dearborn St.<br>Room 873<br>Chicago, IL 60604 | Joel Walker, Esq.<br>Duane Morris LLP<br>600 Grant St., Ste. 5010<br>Pittsburgh, PA 15219-2811 | Rosanne Ciambrone, Esq.<br>Matthew Olins, Esq.<br>Duane Morris LLP<br>190 South LaSalle Street<br>Ste. 3700<br>Chicago, IL 60603-3433 |
| Marty Cann<br>First American Title<br>IL Underwriting Counsel<br>27775 Diehl Rd.<br>Warrenville, IL 60555 | | |

{05919: 210: 00442409.DOC :2 }

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, *et al.*, | ) | Case No. 09-17236 |
| | ) | (Proposed Jointly Administered) |
| Debtor. | ) | |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing Date: June 2, 2009 at 9:30 a.m. |

## MOTION FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR THE CLOSING OF RESIDENTIAL HOME SALES IN THE ORDINARY COURSE AND THE RESOLUTION AND PAYMENT OF LIEN CLAIMS

The Kirk Corporation and nine of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, "Kirk" or the "Debtors")[1], hereby move the Court for entry of an order (the "Motion"), substantially in the form attached hereto as **Exhibit A**, establishing procedures by which the Debtors may sell certain residential homes in the Ordinary Course. In support of this motion, the Debtors respectfully state as follows:

### JURISDICTION

1. On May 12, 2009, each of the Debtors filed its respective voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), commencing the above-captioned Chapter 11 cases. The

---

[1] The Debtors are the following companies: The Kirk Corporation; Apple Creek Estates, LLC; Beacon Pointe West, LLC; Bloomfield Estates, LLC; Laurel Meadow, L.L.C.; The Lindens Venture, L.L.C.; Rockwell Place, LLC; Stonegate Village, LLC; Wing Pointe North, L.L.C; and Westland, LLC. Four affiliates of Kirk are currently non-debtors: Bloomfield West, L.L.C; Freeman Road Development, LLC; Rockwell Utilities, LLC; and Suncrest, L.L.C.

{05919: 210: 00442409.DOC :2 }

Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(c) and 1108 of the Bankruptcy Code.

2. No creditors' committee has been appointed in these cases.

3. This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K).

4. The statutory bases for the relief requested herein are sections 105(a), 363, 506 and 1108 of the Bankruptcy Code.

## BACKGROUND

5. The Kirk Corporation was founded in 1978 as a production homebuilder. Currently, Kirk employs approximately 20 employees. Kirk's principal office is located in Streamwood, Illinois.

6. Kirk, an Illinois corporation, is the sole member of 11 limited liability companies and is the manager and one of the members of two limited liability companies. Nine of these limited liability companies also are Debtors herein. One hundred percent (100%) of the stock of the holding company, Kirk, is owned by the Kirk Corporation Employee Stock Ownership Plan and Trust, pursuant to two (2) transactions; the first of which occurred in 1998 and the second of which occurred in 2002. Thus, the ultimate owners of all the Debtors are all of the employees of the Debtors.

7. The Debtors together currently have (i) four active residential developments in Bolingbrook, Hoffman Estates, Lakemoor, and Woodstock, (ii) five residential developments in Aurora, Bolingbrook, Huntley (unincorporated), New Lenox and Streamwood where construction of homes is complete, (iii) commercial property in Woodstock, and (iv) two

unentitled parcels which are zoned for commercial use in Elburn (unincorporated) and Huntley (unincorporated). As of the Petition Date, the Debtors' aggregate assets total approximately $96,847,300 and the Debtors' aggregate liabilities total approximately $64,537,800, on a consolidated basis.

8. The Debtors' operational and profitability problems are principally due to the sharp and prolonged decline in the Chicago area homebuilding market. In 2006 and 2007, the Debtors built 328 homes and 305 homes, respectively, and had gross revenues of $113,310,092 and $105,898,302, respectively. In 2008 the Debtors built only 78 homes with gross revenues of $24,711,670.

9. The Debtors acknowledge that from time to time prior to the Petition Date, Kirk borrowed money and received other financial accommodations from the JPMorgan Chase Bank, N.A., a national banking association (successor by merger to Bank One NA, with its main office in Chicago, Illinois), as agent ("Agent") for the Debtors' prepetition secured lenders (collectively, the "Lenders") under that certain Amended and Restated Borrowing Base Revolving Line of Credit Agreement dated as of August 25, 2006 (as amended, the "Credit Agreement"), and incurred additional obligations in connection therewith, including without limitation, obligations for payment or reimbursement of certain of the Agent's fees, costs and expenses.

10. The Debtors acknowledge that their obligations under the Credit Agreement ("Obligations") are secured by security interests and liens in and against the majority of the assets of the Debtors in favor of the Agent on behalf of itself and the Lenders (the "Prepetition Collateral"). The Debtors further acknowledge that the Agent has perfected its security interests and liens in and against the Prepetition Collateral by possession thereof or by the filing of

financing statements and other documents as applicable in the appropriate filing and recoding offices.

## ORDINARY COURSE SALES

11. Prior to the Petition Date, the Debtors in the ordinary course of their businesses routinely sold or otherwise disposed of homes constructed by the Debtors, from which the Debtors realized an immediate and significant return. The Debtors plan to continue such ordinary course home sales in these chapter 11 cases ("Ordinary Course Sales") in order to finance these bankruptcy cases, generate additional cash for ongoing operations, and provide adequate protection to the Debtors' lenders.

12. The Debtors currently own twenty-four (24) standing inventory homes, some of which are townhomes and the majority of which are single family homes. Approximately fourteen (14) of these homes are currently under contracts for sale, with the remainder being actively marketed for sale. In addition, the Debtors own seventeen (17) model homes that are currently being used for marketing purposes, and have entered into nine (9) contracts with buyers to sell new homes for which construction has not yet commenced.

13. Since the Petition Date, the Debtors have closed the sale of six (6) homes and expect at least eight (8) more homes to close in the coming weeks. The proceeds of these homes sales are currently being held by First American Title Insurance Company ("First American") in an escrow account established pursuant to the Agreed Interim Order (I) Authorizing Use of Cash Collateral and Adequate Protection and (II) Scheduling and Approving the Form and Method of Notice of the Hearing on the Debtors' Motion for Entry of Final Order to Use Cash Collateral entered by this Court on May 21, 2009 [Docket No. 36] (the "Interim Cash Collateral Order").

## CONSTRUCTION LIENS

14.  As part of their homebuilding operations, the Debtors rely on, and routinely contract with, a number of third party contractors and suppliers who furnish materials, fixtures, apparatus, machinery, labor or services to the Debtors and who hold statutory lien rights[2] against the Debtors' property to secure payment for certain prepetition goods and services or other claims ("Construction Lien Claims"). Specifically, many of the holders of Construction Lien Claims (the "Construction Lien Claimants") have rights under applicable state law to assert and mechanics' liens or other similar claims that have given or could give rise to liens against the Debtors' property (the "Construction Liens"), which attach to the Debtors' homes and related real property. In the majority of instances, the Construction Lien Claimants are entitled to priority over the Agent and Lenders because applicable law generally provides that Construction Lien rights take priority over subsequent liens and prime prior encumbrances' where the underlying property has been enhanced by the furnishing of labor, materials and other services to the Debtors.

15.  Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting Construction Liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay. Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers are "subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ." 11 U.S.C. § 546(b)(1)(A). Therefore, notwithstanding the automatic stay imposed by section 362 of the Bankruptcy Code, Construction Lien Claimants may be entitled to assert and perfect Construction Liens against the Debtors' property during these cases.

16. Although the Interim Cash Collateral Order contemplates on its face that the Debtors have the ability to "close" Ordinary Course Sales, home purchasers and their lenders are unwilling to proceed to closing without the issuance of a title insurance policy that insures that title to the subject property is free and clear of lien, claims and encumbrances. Indeed, delivery of clean title and title insurance is a condition precedent to the home buyers' obligations to close their Ordinary Course Sales.

17. At this point, the Debtors have found that title insurance companies and underwriters (including, without limitation, First American, the "Title Insurers") will not proceed with home closings without some assurance that Construction Liens will not impair title to the purchased homes. Prior to the commencement of these bankruptcy cases, the Debtors have historically had the ability to sell homes without first clearing each and every Construction Lien Claim because their Title Insurers accepted the agreement of Kirk to indemnify them from and against any valid Lien Claims (with Kirk satisfying those claims post-closing out of sale proceeds). However, with Kirk in chapter 11, the Title Insurers will be unwilling to rely upon such an indemnity going forward.

18. Accordingly, the Debtors require an order from the Court authorizing them to close Ordinary Course Sales free and clear of all Construction Liens, whether filed or unfiled, with such liens being replaced and attaching to the proceeds of each sale in accordance with the proposed procedures set forth below.

## LIEN RESOLUTION PROCEDURES

19. The Debtors propose to use the following "Lien Resolution Procedures" for Ordinary Course Sales so the Debtors can close their Ordinary Course Sales, Title Insurers

---

[2] See Illinois Mechanics Lien Act, 770 ILCS 60/1 et seq.

{05919: 210: 00442409.DOC :2 }

will be able to provide purchasers with appropriate title insurance to the purchased home and the rights of Construction Lien Claimants will be adequately protected:

(a) The Debtors shall be authorized to close Ordinary Course Sales, which Ordinary Course Sales shall be free and clear of all liens, claims, encumbrances and other interests.

(b) All Construction Liens on the sold property shall transfer to and shall attach to the Net Proceeds/Construction Costs proceeds (as defined in the Interim Cash Collateral Order) at the time of closing.[3] Construction Lien Claims secured by valid and enforceable Construction Liens shall be deemed secured claims against the Debtors to the extent of the proceeds.

(c) At the scheduled closing of each Ordinary Course Sale, the Debtors shall submit a Sworn Owner's Statement to First American setting forth each of the Construction Lien Claimants to be paid (an "Owner's Statement") from the proceeds of such sale.

(d) In exchange for payment on its Construction Lien Claims, each Construction Lien Claimant that appears on an Owner's Statement must submit to First American (i) a Final Waiver of Lien (and Release of Lien, if applicable) ("Final Waiver"), in a form substantially similar to the one attached hereto as **Exhibit B** and (ii) a Construction Affidavit ("Construction Affidavit"), in a form substantially similar to the one attached hereto as **Exhibit C**.[4] Upon the receipt thereof, First American shall forward a copy of the Owner's Statement, each Final Waiver and each corresponding Construction Affidavit (collectively, a "Closing Package") to the Agent's counsel via Overnight Delivery to Rosanne Ciambrone, Esq., Duane Morris LLP, 190 South LaSalle Street, Suite 3700, Chicago, IL 60603-3433. Upon receipt of the documents which comprise the Closing Package for each home, First American shall issue appropriate title insurance to the purchaser.

(e) The Agent shall have three (3) business days from receipt of a Closing Package to object in writing to the Construction Lien Claims contained therein, identifying the specific Construction Lien Claims objected to, and stating with reasonable specificity and factual basis the grounds for objecting to any Construction Lien Claims (each, a "Lenders' Closing Objection"), provided that the Closing Package is received by the Lenders on or before 4:00 p.m. (CST). Should the Closing Package be received by the Lenders after 4:00 p.m. (CST), the Lenders shall have until the fourth (4th) business day from receipt to file the Lenders' Closing Objection. Any Lenders' Closing Objection shall be provided to the Debtors and First American via electronic mail not later than three (3) business days following receipt of a Certified Statement using the following electronic mail addresses: jcarroll@kirkhomes.com and FLammiman@mpslaw.com; and mcann@firstam.com.

(f) If no Lenders' Closing Objection is timely received by the Debtors and First American, First American shall disburse from the Net Proceeds/Construction Costs Escrow Account

---

[3] The liens and security interests of the Agent and Lenders shall attach to Net Proceeds/Construction Costs as set forth in the Interim Cash Collateral Order.

[4] A Construction Lien Claimant that provides a Final Waiver and Construction Affidavit as set forth herein will not be required to take any steps under applicable non-bankruptcy law to obtain, record, or perfect its Construction Lien or replacement lien, nd such lien will not be determined to be invalid solely as a result of the Construction Lien Claimant's failure to take such steps.

(as defined in the Interim Cash Collateral Order) to each Construction Lien Claimant that amount set forth for each such Construction Lien Claimant on the applicable Owner's Statement.

(g) If a Lenders' Closing Objection is timely received by First American and the Debtors, First American shall make no disbursements on the disputed items contained in such Closing Package unless and until ordered to do so by the Court, or until such time as such Lenders' Closing Objection is withdrawn in writing by the Lenders. Notwithstanding anything contained herein to the contrary, (i) First American shall make disbursements, in accordance with Paragraph 19(f) above, on all non-disputed items in a Closing Package pending the resolution of the Lenders' Closing Objection on the disputed items in such Closing Package, and (ii) the pendency of a Lenders' Closing Objection to a specific Closing Package shall not delay or otherwise prevent First American from making disbursements, in accordance with the terms hereof, on any other Closing Package for which no Lenders' Closing Objection has been received.

(h) The Debtors, Agent and Construction Lien Claimant that is the subject of a particular Lenders' Closing Objection shall negotiate in good faith to resolve the dispute. If the dispute is not resolved within thirty (30) days after receipt of the Closing Package, any party may seek a determination from the Court (a "<u>Lien Resolution Proceeding</u>") as to the validity, priority or extent of the underlying Construction Lien by filing a motion for same before this Court.

20. The Lien Resolution Procedures will provide the Debtors with authority to make payments to the Construction Lien Claimants in the amounts and to the extent necessary to satisfy undisputed Construction Liens securing prepetition claims. The Debtors respectfully submit that the materials and services provided by the Construction Lien Claimants are essential to the Debtors' reorganization, and that the need to be able to close homes free and clear of Construction Liens is of paramount importance to the Debtors' ongoing operations.

## RELIEF REQUESTED

21. By this motion, the Debtors seek approval of the proposed Lien Resolution Procedures. The Lien Resolution Procedures will allow Ordinary Course Sales to close and Title Insurers to provide title insurance at closing to purchasers of the Debtors' homes while, at the same time, facilitate an expeditious review process by the Agent in lieu of individual Court approval. Without such an expedited process, the Debtors will likely lose the opportunity to close certain Ordinary Course Sales and maximize the value of the Debtors' assets.

## BASIS FOR RELIEF

22. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances, especially where those payments are entitled to priority in bankruptcy. *See, e.g., In re Enesco Group, Inc.*, Case No. 07-00565 (ABG) (Bankr. N.D. Ill. Jan. 22, 2007) (authorizing debtors to pay prepetition employee obligations); *In re Glazed Invs., LLC*, Case No. 06-00932 (PSH) (Bankr. N.D. Ill. Feb. 7, 2006) (authorizing debtors to pay certain prepetition tax obligations).

23. It is also not uncommon for courts to authorize the payment of prepetition claims of shippers, warehousemen, and other lien claimants. *See, e.g., In re Arlington Hospitality, Inc.*, Case No 05-34885 (ABG) (Bankr. N.D. Ill. Sept. 2, 2005); *In re Jernberg Indus. Corp.*, Case No. 05-25909 (Bankr. N.D. Ill. July 21, 2005); *In re UAL Corp.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (authorizing payment to certain contractors in satisfaction of potential or perfected lien claims); *In re Kmart Corp.*, Case No. 02-02474 (SPS) (Bankr. N.D. Ill. Jan. 25, 2002) (same).

24. Specifically, courts have recognized that the relief requested herein is particularly appropriate for large homebuilders in bankruptcy. *See In re Kimball Hill, Inc.*, Case No.08-10095 (SPS) (Bankr. N.D. Ill. April 25, 2008) (order establishing procedures for the resolution and payment of lien claims); *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Jan. 31, 2008) (order establishing procedures for the resolution and payment of lien claims); *In re Levitt & Sons, LLC*, Case No. 07-19845 (Bankr. S.D. Fla. Nov. 14, 2007) (order granting debtors' motion to sell homes post-petition in the ordinary course of business).

25. Moreover, courts have relied on several legal theories to authorize debtors to sell assets free and clear of liens, including section 363(b) of the Bankruptcy Code, where a sound

business purpose exists for doing so. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Banks. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

26.    The relief sought herein is appropriate under each of the foregoing standards. The Construction Lien Claimants provide essentially all of the goods or services necessary to construct the Debtors' homes and are fundamental to the Debtors' operations. Failure to pay the Construction Lien Claims may lead the Construction Lien Claimants to refuse to provide building materials and services going forward, refuse warranty service and alter pricing, each of which would substantially impede the Debtors' ability to construct or complete homes and cause significant expense and delay thereby impeding the Debtors' ability to continuing selling homes and operating as a going concern.

27.    In addition, the relief requested herein is appropriate because it complies with the provisions of the Bankruptcy Code. Specifically, because (and to the extent that) the amount of the Construction Lien Claimants' prepetition claims is likely less than the value of the homes and real property securing those claims, Construction Lien Claimants holding lien rights are likely over-secured creditors. In general, under section 506(b) of the Bankruptcy Code, fully secured creditors are entitled to receive (a) payment in full of their prepetition claims under any confirmed plan in these chapter 11 cases, and (b) the postpetition interest accruing on such claims to the extent that such claims are over-secured. Consequently, approval of the Lien Resolution Procedures, which provide a mechanism for the Debtors to pay certain fully secured

prepetition obligations, will provide the Construction Lien Claimants with no more than that which they otherwise would be entitled to under a plan and will save the Debtors the interest costs that otherwise might accrue on the Lien Claims during these chapter 11 cases.

28. Given the Debtors' dependence on the Construction Lien Claimants and, hence, the Construction Lien Claimants' importance to the preservation of the value of the Debtors' estates, together with the fundamental need of the Debtors close Ordinary Course Sales, payment of the Construction Lien Claims is appropriate under the circumstances and in the best interests of the Debtors, their creditors and other parties in interest. Moreover, the Lien Resolution Procedures provide a mechanism for addressing the various legal rights of all interested parties, and provide for a negotiation period designed to avoid burdening the Court with disputed issues unless circumstances require otherwise. For all of the foregoing reasons, the Debtors request that the Court approve the Lien Resolution Procedures and authorize the Debtors to pay the Construction Lien Claims without further order of the Court.

29. The Lien Resolution Procedures will simplify and expedite First American's ability to issue Title Policies to bona fide purchasers in the ordinary course, expedite the flow of cash into the estates, protect the Debtors against delay and undue expense, save the Debtors the costs of interim holding or storage of inventory and eliminate certain administrative costs. Thus, the relief requested herein is particularly beneficial to the Debtors, their estates and their creditors in that it facilitates the closing of the Ordinary Course Sales.

## RESERVATION OF RIGHTS

30. Nothing in this Motion should be construed as: (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any

claims; or (c) an approval of the assumption or rejection of any agreement, contract or lease, pursuant to section 365 of the Bankruptcy Code.

### WAIVER OF BANKRUPTCY RULE 6004(H)

31. Rule 6004(h) of the Bankruptcy Rules provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that any order approving the relief requested herein be effective immediately by providing that the 10-day stay under Bankruptcy Rule 6004(h) is waived.

### NOTICE

32. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) JPMorgan Chase, N.A., as Agent for the prepetition Lenders, and its counsel; and (c) the Debtors' thirty (30) largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions; and (d) all parties filing appearances or requesting notice via the Court's CM/ECF system. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

[Remainder of this page intentionally left blank]

{05919: 210: 00442409.DOC :2 }

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, (a) establishing the Lien Resolution Procedures and (b) granting such other and further relief as is just and proper.

Dated: May 28, 2009

Respectfully submitted,

**THE KIRK CORPORATION
AND ITS AFFILIATE DEBTORS**

By: /s/ Forrest B. Lammiman
    One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)