**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, | ) | Case No. 09-17236 |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | Honorable Eugene R. Wedoff |

~~SECOND~~ FINAL

**~~AMENDED AGREED INTERIM~~ ORDER ~~(I)~~ AUTHORIZING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION ~~AND (II) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE OF THE HEARING ON THE DEBTORS' MOTION FOR ENTRY OF FINAL ORDER TO USE CASH COLLATERAL~~**

This matter coming before the Court on the motion (the "Motion")[1] for approval and entry of an ~~Interim~~ Order Authorizing Use of Cash Collateral and Adequate Protection ~~("Interim Cash Collateral Order")~~ made by The Kirk Corporation and the other jointly administered debtors in these cases, as debtors and debtors-in-possession (collectively, the "Debtors")[2]; a ~~preliminary hearing ("Preliminary Hearing") having been held on an expedited and emergency basis~~ hearings having been held to consider Debtors' use of cash collateral and grant of adequate protection ~~pending the final hearing thereon (the "Final Hearing")~~ as provided under sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), and Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); telephonic,

[1] Capitalized terms used and not defined herein shall have the meanings set forth in the Motion.

[2] The Debtors are the following companies: The Kirk Corporation; Apple Creek Estates, LLC; Beacon Pointe West, LLC; Bloomfield Estates, LLC; Laurel Meadow, L.L.C.; The Lindens Venture, L.L.C.; Rockwell Place, LLC; Stonegate Village, LLC; Wing Pointe North, L.L.C; and Westland, LLC. Four affiliates of Kirk are currently non-debtors: Bloomfield West, L.L.C; Freeman Road Development, LLC; Rockwell Utilities, LLC; and Suncrest, L.L.C.

{05919: 210: 00446431.DOC :4 }
DM3\1028822.4

Case 09-17236 Doc 69 Filed 06/04/09 Entered 06/04/09 16:54:02 Desc Main
Document Page 2 of 11

email, overnight mail, hand delivery and/or telecopy notice of the Preliminary Hearing having been given to: (a) the Office of the United States Trustee; (b) Agent for the Lenders, and its counsel; and (c) the Debtors' consolidated thirty (30) largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions; adequate and appropriate notice of the Preliminary Hearing having been given in accordance with Bankruptcy Rule 4001(b); ~~the Preliminary Hearing having been held on May 14, 2009~~ and having considered the evidence presented at the ~~Preliminary~~ Hearings and the statements of respective counsel for the Debtors, JPMorgan Chase, N.A., as agent (the "Agent") for the lenders (the "Lenders"), and other parties in interest, the Court, being duly advised in the premises, hereby makes the following findings of fact and conclusions of laws :

and the Debtors' agreement to provide the Lenders with a replacement lien on the [illegible] Company [illegible]

**IT IS HEREBY ORDERED THAT:**

1. The Motion is hereby GRANTED only to the extent and as set forth herein below.

2. Subject to the terms and conditions of this Interim Cash Collateral Order, to the extent of the [illegible] diminution of the Lenders' Collateral, the Debtors are hereby authorized to use Cash Collateral to pay wages, salaries, and operating expenses incurred from the Petition Date through and including ~~June 24~~ July 31, 2009 (the "Interim Cash Collateral Period") as set forth in the ~~Disbursement~~ Budget attached hereto as **Exhibit A**.

3. The Debtors are authorized, and title insurers are permitted, to close sales of residential homes in the ordinary course during the Interim Cash Collateral Period. Net Proceeds/Construction Costs (as hereinafter defined) of such sales shall be deposited in an escrow account (the "Net Proceeds/Construction Costs Escrow Account") and held at First American Title Insurance Company ("First American"). As used herein, the term "Net Proceeds/Construction Costs" shall mean the gross sales price for each home, less only customary and reasonable closing costs incident to each sale and consistent with past practice,

{05919; 210; 00446431.DOC ;4 }{
DM3\1028822.4

such as transfer taxes, real estate taxes, title and escrow fees, buyer incentives and other buyer credits not otherwise reflected in the purchase price, and reasonable brokers commissions (the "Closing Costs").[3] Any valid liens held prior to closing against the property being sold shall attach to the Net Proceeds/Construction Costs in accordance with their respective priorities under state law. First American shall maintain its customary separate accounting summary with respect to each such closing and shall continue to separately account for the proceeds of each home closing, even if only a portion of the closing proceeds that are held in the Net Proceeds/Construction Costs Escrow Account are classified as net proceeds in First American's separate accounting summary for a home closing. The automatic stay in place pursuant to Section 362 of the Bankruptcy Code is hereby modified, as necessary, in order to allow First American to comply with the terms of this Interim Cash Collateral Order.

4. The disbursements made pursuant to the ~~Disbursement~~ Budget ~~during the Interim Cash Collateral Period~~ shall be for expenses payable (other than Closing Costs)[4], or incurred but not paid or payable, during the Interim Cash Collateral Period, and shall be capped at ~~$[illegible]~~ $1,850,000.00 (the "Permitted Disbursements"). Such Permitted Disbursements shall be solely ~~for (a) overhead (excluding real estate taxes), (b) payroll and (c) any amounts payable to persons and entities furnishing labor, materials, fixtures or services in connection with the sale of homes incurred from and after the Petition Date, (May 12, 2009),~~ as set forth in the ~~Disbursement~~ Budget, and shall be divided between the Debtors and Lenders pursuant to the following requirements:



[3] Closing Costs shall not exceed the amount set forth on the Disbursement Budget, plus the payment of real estate taxes that are payable at home closings, which payment of real estate taxes shall be capped at $50,000.00 in the aggregate.

[4] While Closing Costs are included in the Disbursement Budget, the Closing Costs are deducted from gross sales proceeds and paid at the closing of each home sale, and are not a Permitted Disbursement.



{05919: 210: 00446431.DOC :4 }{
DMX1028822.4

(a) The Debtors' portion of the Permitted Disbursements under the Disbursement Budget shall be drawn from its segregated account at Charter National Bank & Trust[5] and shall be capped at $350,000.00;

(b) The ~~Lenders'~~ Escrow portion of the Permitted Disbursements under the ~~Disbursement~~ Budget shall be drawn from the Net Proceeds/Construction Costs Escrow Account (the "Escrow") and shall be capped at ~~$425,000.00~~ $1,500,000.00 for the period through and including ~~June 26~~ July 31, 2009 ~~(the "Interim Period")~~. No other amounts shall be drawn from the Net Proceeds/Construction Costs Escrow Account unless and until authorized by express order of the Court.

(c) Distributions from the Net Proceeds/Construction Costs Escrow Account shall be made by First American as follows: (i) the Debtors and the Lenders shall equally share the first $550,000.00 in aggregate disbursements and incurred costs of the Permitted Disbursements; (ii) the Debtors shall be solely responsible for the next $75,000.00 in aggregate disbursements and incurred costs of the Permitted Disbursements; and (iii) ~~the Lenders shall be solely responsible for the final~~ the Escrow shall be the source of all additional amounts $1,225,000.00 ~~$220,000.00~~ in aggregate disbursements and incurred costs of the Permitted Disbursements.

(d) In order for the Debtors to use Lenders' Cash Collateral as set forth in Paragraph 4(b) above:

(i) The Debtors shall submit a series of certified statements to First American and Lenders which shall set forth the Permitted

[5] The Debtors, the Agent and the Lenders each reserve all rights with respect to liens or other claims against the funds in the Charter National Bank & Trust account.

{05919: 210: 00446431.DOC :4 }
DMGA\1028822.4

Disbursements made by the Debtors pursuant to the Disbursement Budget (each, a "Certified Statement").

(ii) The Lenders shall have three (3) business days from receipt of a Certified Statement to object in writing to the items contained therein, identifying the specific items objected to and stating with reasonable specificity the grounds for such objection (each, a "Lenders' Objection"), provided that the Certified Statement is received by the Lenders on or before 4:00 p.m. (CDT). Should the Certified Statement be received by the Lenders after 4:00 p.m. (CST), the Lenders shall have until the fourth (4th) business day from receipt to file the Lenders' Objection. Any Lenders' Objection shall be provided to the Debtors and First American via electronic mail using the following electronic mail addresses: jcarroll@kirkhomes.com and FLammiman@mpslaw.com; and mcann@firstam.com.

(iii) In accordance with Paragraph 4(c) above, if no Lenders' Objection is timely received by the Debtors and First American, First American shall disburse from the Net Proceeds Escrow Account to the Debtors fifty cents (50¢) for every dollar ($1.00) requested in such Certified Statement until $275,00.00 has been disbursed from the Net Proceeds Escrow Account. If no Lenders' Objection is timely received by the Debtors and First American, and after the Debtors have met their disbursement cap of $350,00.00, First

American shall disburse from the Net Proceeds Escrow Account to the Debtors one dollar ($1.00) for every dollar ($1.00) requested in such Certified Statement, provided however, such disbursements from the Net Proceeds Escrow Account shall not exceed $~~495,000.00~~ 1,500,000.00, in the aggregate, during the Interim Period.



(iv) If a Lenders' Objection is timely received by First American and the Debtors, First American shall make no disbursements on the disputed items contained in such Certified Statement unless and until ordered to do so by the Court, or until such time as such Lenders' Objection is withdrawn in writing by the Lenders. Notwithstanding anything contained herein to the contrary, First American shall make disbursements, in accordance with Paragraph 4(d)(iii) above, to or as directed by the Debtors on all non-disputed items in a Certified Statement pending the resolution of the Lenders' Objection on the disputed items in such Certified Statement.

(v) Notwithstanding anything contained herein to the contrary, the pendency of a Lenders' Objection to a specific Certified Statement shall not delay or otherwise prevent First American from making disbursements, in accordance with the terms hereof, on any other Certified Statement for which no Lenders' Objection has been received.

Case 09-17236 Doc 69 Filed 06/04/09 Entered 06/04/09 16:54:02 Desc Main
Document Page 7 of 11

5. Except as may be ordered by the Court, no payments shall be made on account of any amounts payable to persons and entities furnishing labor, materials, fixtures or services incurred prior to the Petition Date, (the "Prepetition Construction Claims"), nor shall the Prepetition Construction Claims be deducted from gross sales proceeds for the purpose of calculating the Net Proceeds/Construction Costs to be deposited in the Net Proceeds/Construction Costs Escrow Account. All of the rights of the Debtors and any party asserting any of the Prepetition Construction Claims to seek authority from this Court to pay any Prepetition Construction Claims are expressly reserved.

6. During the Interim Cash Collateral Period, the Debtors shall provide the Agent with such information as the Agent may reasonably request concerning the Debtors' business operations and the financial condition of the Debtors, with the same form, guidance, accuracy and detail as that previously provided by the Debtors prior to commencement of these cases, including, without limitation, weekly statements of expenditures. Further, by 12:00 p.m. Wednesday on a biweekly basis beginning on May 27, 2009, the Debtors shall provide the Lenders with copies of any invoices or other supporting documents for items paid during the previous two weeks, including, without limitation: (a) actual to budget reports, (b) weekly liquidity rolls by bank account, (c) detailed accounts payable runs, (d) listings of sales, closings and closing statements and (e) construction progress reports. The Agent and its advisors, including Conway MacKenzie, and Dunleavy, shall have reasonable access to the Debtors' books and records during normal business hours.

7. Notwithstanding anything contained in this Interim Cash Collateral Order or the Disbursement Budget to the contrary, the Debtors shall not be entitled to use the Lenders' Cash

{05919: 210: 00446431.DOC .4 }
DM3\1028622.4

Case 09-17236 Doc 69 Filed 06/04/09 Entered 06/04/09 16:54:02 Desc Main
Document Page 8 of 11

Collateral for any new home starts, including commencing construction of new homes or units, without further order of the Court.

8. Nothing herein shall require or be deemed to require the Agent or the Lenders to make a loan or extend other financing or financial accommodations to or for the benefit of any of the Debtors.

9. The provisions of this Interim Cash Collateral Order shall be binding upon and inure to the benefit of the Agent, the Lenders, the Debtors and their respective successors and assigns (including any trustee hereinafter appointed as a representative of any of the Debtors' estates).

10. The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001 shall be held on June 22, 2009, at 9:30 a.m. (CDT) in Courtroom 744, United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

11. The Agent, the Lenders and the Debtors reserve all rights with respect to the Final Hearing and any subsequent order allowing the use of cash collateral.

12. A copy of this Interim Cash Collateral Order and Notice of the Final Hearing shall be served on or before June 8, 2009 upon (a) the Office of the United States Trustee; (b) Agent for the Lenders, and its counsel; (c) the Debtors' thirty (30) largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions, and (d) counsel to the Creditors Committee, if any, shall constitute good and sufficient notice of the Final Hearing on the Motion.

13. Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position shall be filed with the Clerk of the Bankruptcy Court, and personally served by e-mail, hand or telecopy

Case 09-17236 Doc 69 Filed 06/04/09 Entered 06/04/09 16:54:02 Desc Main Document Page 9 of 11

delivery upon (a) the attorney's for the Debtors, Meltzer, Purtill & Stelle LLC, 300 South Wacker Drive, Chicago, Illinois 60606, Attention: Forrest B. Lammiman, Esq. and David L. Kane, Esq.; (b) the attorneys for the Agent, Joel Walker, Esq., Duane Morris LLP, 600 Grant Street, Suite 5010, Pittsburgh, Pennsylvania, 15219-2811 and Rosanne Ciambrone, Esq., Duane Morris LLP, 190 South LaSalle Street, Suite 3700, Chicago, Illinois 60603; and (c) the Office of the United States Trustee, 219 South Dearborn Street, Room 873, Chicago, Illinois 60604, Attention: Roman Sukley, so that they are filed with the Court and received by said parties on or before 10:00 p.m. (CDT), on June 16, 2009.

14. The provisions of ~~the Interim Cash Collateral~~ this FINAL Order (the "~~Second Amended Agreed Interim~~ Order") shall be effective immediately upon entry of this ~~Interim~~ FINAL Cash Collateral Order, and the Clerk of the Court is hereby directed to forthwith enter this ~~Interim~~ FINAL Cash Collateral Order on the docket of this Court maintained in regard to these Cases.

Dated: ~~June~~ July 1, 2009

June 23, 2009

Eugene R. Wedoff

Honorable Eugene R. Wedoff
United States Bankruptcy Judge

**EXHIBIT A**

DISBURSEMENT BUDGET

**Kirk Corporation**
13 Week Forecast

| | Week 1 5/15 | Week 2 5/22 | Week 3 5/29 | Week 4 6/5 | Week 5 6/12 | Week 6 6/19 | Week 7 6/26 | Week 8 7/3 | Week 9 7/10 | Week 10 7/17 | Week 11 7/24 | Week 12 7/31 | Week 13 8/7 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SALES & CLOSINGS** | | | | | | | | | | | | | | |
| Sales (units) | 2 | 1 | 4 | 1 | 4 | 1 | 1 | 2 | - | - | - | - | - | 16 |
| Sales ($) | $ 506,135 | $ 301,100 | $ 907,585 | $ 162,495 | $ 1,010,105 | $ 162,495 | $ 301,100 | $ 463,990 | $ - | $ - | $ - | $ - | - | 3,815,003 |
| Per Unit | $ 253,067 | $ 301,100 | $ 226,896 | $ 162,495 | $ 252,526 | $ 162,495 | $ 301,100 | $ 231,995 | $ - | $ - | $ - | $ - | - | $ 238,438 |
| Closings (units) | 2 | 4 | 2 | 2 | 1 | 5 | 4 | 4 | - | 4 | 2 | 2 | 1 | 33 |
| Closings ($) | $ 682,475 | $ 1,014,703 | $ 586,995 | $ 533,895 | $ 364,995 | $ 1,382,930 | $ 963,130 | $ 748,980 | $ - | $ 906,585 | $ 427,510 | $ 463,990 | $ 301,100 | 8,377,286 |
| Per Unit | $ 341,238 | $ 253,676 | $ 293,498 | $ 266,948 | $ 364,995 | $ 276,586 | $ 240,782 | $ 187,245 | $ - | $ 226,646 | $ 213,755 | $ 231,995 | $ 301,100 | $ 253,857 |
| **NET CASH FLOW** | | | | | | | | | | | | | | |
| **Closing Proceeds** | | | | | | | | | | | | | | |
| Gross Proceeds | 682,475 | 1,014,703 | 586,995 | 533,895 | 364,995 | 1,382,930 | 963,130 | 748,980 | - | 906,585 | 427,510 | 463,990 | 301,100 | 8,377,285 |
| Cost to Complete Paid at closing | (22,160) | (350,930) | (51,061) | (127,022) | (21,789) | (161,483) | (396,301) | (142,001) | - | (305,316) | (120,335) | (51,040) | (123,082) | (1,877,521) |
| Closing Costs | (30,815) | (45,275) | (22,117) | (29,988) | (8,808) | (35,246) | (31,006) | (22,713) | - | (25,051) | (16,788) | (14,728) | (6,283) | (283,819) |
| Commercial/Other Proceeds | - | - | - | 3,050,000 | - | - | - | - | - | 340,000 | - | - | - | 3,390,000 |
| Net Closing Proceeds | 629,500 | 618,498 | 513,817 | 3,426,885 | 334,398 | 1,186,200 | 535,822 | 584,266 | - | 916,217 | 290,387 | 398,222 | 171,734 | 9,605,947 |
| Closing Proceeds to Loan Repay | (440,650) | (432,949) | (359,672) | (1,483,820) | (234,078) | (830,340) | (375,075) | (408,987) | - | (539,352) | (203,271) | (278,755) | (120,214) | (5,707,163) |
| Net Proceeds Retained | 188,850 | 185,549 | 154,145 | 1,943,066 | 100,319 | 355,860 | 160,747 | 175,280 | - | 376,865 | 87,116 | 119,467 | 51,520 | 3,898,784 |
| **Receipts** | | | | | | | | | | | | | | |
| Rockwell Utilities Collections | - | - | - | 30,000 | - | - | - | 30,000 | - | - | - | 30,000 | - | 90,000 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Net Closing Proceeds | 188,850 | 185,549 | 154,145 | 1,943,066 | 100,319 | 355,860 | 160,747 | 175,280 | - | 376,865 | 87,116 | 119,467 | 51,520 | 3,898,784 |
| Total Receipts | 188,850 | 185,549 | 154,145 | 1,973,066 | 100,319 | 355,860 | 160,747 | 205,280 | - | 376,865 | 87,116 | 149,467 | 51,520 | 3,988,784 |
| **Disbursements** | | | | | | | | | | | | | | |
| Overhead Expenses | 49,659 | 21,152 | 101,494 | 55,177 | 66,911 | 40,596 | 46,581 | 50,681 | 180,000 | 50,000 | 50,000 | 50,000 | 50,000 | 812,252 |
| Payroll | - | 56,381 | - | 56,064 | - | 55,646 | - | 55,646 | - | 55,646 | - | 55,646 | - | 335,019 |
| Severance | - | 10,017 | - | 6,366 | - | 1,812 | - | - | - | - | - | - | - | 18,195 |
| Cost to Complete | 50,000 | 50,000 | 50,000 | 50,000 | 20,000 | 20,000 | 20,000 | - | - | - | - | - | - | 260,000 |
| Interest (Incl. in Lender Proceeds) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fees | - | - | - | - | - | - | - | 108,000 | 108,000 | 108,000 | 108,000 | 108,000 | 108,000 | 648,000 |
| Other Outstanding A/P [1] | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Disbursements | 99,659 | 137,550 | 151,494 | 167,597 | 86,911 | 118,054 | 66,582 | 214,327 | 288,000 | 213,646 | 158,000 | 213,646 | 158,000 | 2,073,466 |
| **Net Cash Flow** | 89,191 | 47,999 | 2,651 | 1,805,469 | 13,408 | 237,806 | 94,165 | (9,047) | (288,000) | 163,219 | (70,884) | (64,179) | (106,480) | 1,915,318 |
| **LIQUIDITY** | | | | | | | | | | | | | | |
| Beginning Balance | 602,000 | 691,191 | 739,190 | 741,841 | 2,547,310 | 2,560,718 | 2,798,524 | 2,892,689 | 2,883,642 | 2,595,642 | 2,758,861 | 2,687,977 | 2,623,798 | 602,000 |
| Less: Disbursements | (99,659) | (137,550) | (151,494) | (167,597) | (86,911) | (118,054) | (66,582) | (214,327) | (288,000) | (213,646) | (158,000) | (213,646) | (158,000) | (2,073,466) |
| Add: Net Retained Proceeds | 188,850 | 185,549 | 154,145 | 1,943,066 | 100,319 | 355,860 | 160,747 | 175,280 | - | 376,865 | 87,116 | 119,467 | 51,520 | 3,898,784 |
| Add: Utility Collections | - | - | - | 30,000 | - | - | - | 30,000 | - | - | - | 30,000 | - | 90,000 |
| Add: Misc. Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Balance** | 691,191 | 739,190 | 741,841 | 2,547,310 | 2,560,718 | 2,798,524 | 2,892,689 | 2,883,642 | 2,595,642 | 2,758,861 | 2,687,977 | 2,623,798 | 2,517,318 | 2,517,318 |
| **LOAN BALANCE** | | | | | | | | | | | | | | |
| Beginning Balance | 48,069,309 | 47,628,659 | 47,195,710 | 46,836,039 | 45,352,219 | 45,118,141 | 44,287,801 | 43,912,725 | 43,503,739 | 43,503,739 | 42,964,387 | 42,761,115 | 42,482,360 | 48,069,309 |
| Less: Loan Repayments | (440,650) | (432,949) | (359,672) | (1,483,820) | (234,078) | (830,340) | (375,075) | (408,987) | - | (539,352) | (203,271) | (278,755) | (120,214) | (5,707,163) |
| Add: Disbursements | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Balance** | 47,628,659 | 47,195,710 | 46,836,039 | 45,352,219 | 45,118,141 | 44,287,801 | 43,912,725 | 43,503,739 | 43,503,739 | 42,964,387 | 42,761,115 | 42,482,360 | 42,362,146 | 42,362,146 |

EXHIBIT
JPMC
4