**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, *et al.*, | ) | Case No. 09-17236 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Carol A. Doyle |

**ORDER GRANTING MOTION FOR AN ORDER (I) AUTHORIZING
THE DEBTORS TO SELL CERTAIN ASSETS OUTSIDE OF THE ORDINARY
COURSE, (II) APPROVING BID AND AUCTION PROCEDURES AND
(III) APPROVING THE FORM AND MANNER OF NOTICES THEREOF**

THIS MATTER having come before the Court upon the Motion for an Order (i) Authorizing the Debtors to Sell Certain Assets Outside of the Ordinary Course, (ii) Approving Bid and Auction Procedures and (iii) Approving the Form and Manner of Notices Thereof (the "Motion")[1] filed by The Kirk Corporation and eleven of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively with the Affiliate Debtors, "Kirk" or the "Debtors")[2]; the Court finding that: (i) it has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; (v) proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and (vi) good and sufficient cause exists for the granting of the relief requested in the Motion, after having given due deliberation to the Motion and all of the proceedings had before the Court in connection with the Motion. Therefore,

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

[2] The Debtors are the following companies: The Kirk Corporation; Apple Creek Estates, LLC; Beacon Pointe West, LLC; Bloomfield Estates, LLC; Laurel Meadow, L.L.C.; The Lindens Venture, L.L.C.; Rockwell Place, LLC; Stonegate Village, LLC; Wing Pointe North, L.L.C; and Westland, LLC; Bloomfield West, L.L.C. (filed June 8, 2009); and Freeman Road Development, LLC (filed June 8, 2009). Two affiliates of Kirk are currently non-debtors: Rockwell Utilities, LLC; and Suncrest, L.L.C.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

B. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

C. Good and sufficient notice of the Motion and relief requested herein has been given and no other or further notice is required.

D. The Notice Procedures constitute good, appropriate, adequate and sufficient notice and are reasonably calculated to provide all interested parties with timely and proper notice of the Auction Procedures, Auction and Sale Hearing.

E. The Debtors have demonstrated sound business justification for payment of the Break-Up Fee under the circumstances and pursuant to the terms set forth in the Auction Procedures and Stalking Horse Agreement.

F. The amount of the Break-Up Fee is fair and reasonable, provides a benefit to the Debtors' estates and creditors and was negotiated at arms' length.

G. The payment of payment of the Break-Up Fee to Valente, if required by the Stalking Horse Agreement and the Auction Procedures, is (a) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code; (b) of substantial benefit to the Debtors' estates; (c) reasonable and appropriate, including in light of the size and nature of the proposed sale of the Freeman Road Property and the efforts (and the significant due diligence costs and expenses) that have been and will be expended by Valente, notwithstanding that the proposed sale of the Freeman Road Property is subject to higher or better offers; (d) not a penalty, but a reasonable estimate of the damages to be suffered by Valente in the event the transactions contemplated by the Stalking Horse Agreement are not consummated under the circumstances set forth therein and in the Auction Procedures, and (e) necessary to ensure that Valente will continue to pursue its proposed acquisition of the Freeman Road Property.

H. The entry of this Order is in the best interest of the Debtors, their estates, their creditors and all other parties in interest, as the Debtors will, among other things, retain for the benefit of the Debtors' estates the prospect of a successful sale to Valente while enabling the Debtors to solicit competing bids for the Freeman Road Property; and it is therefore:

**ORDERED, JUDGED AND DECREED THAT:**

1. The relief requested in the Motion is GRANTED as set forth herein.

2. The Auction Procedures attached hereto as **Exhibit A**, which are incorporated herein by reference as though fully set forth in this Order, are approved and shall apply with respect to the proposed Sale of the Freeman Road Property.

DM3\1029969.1

3.  The Break-Up Fee as set forth in the Auction Procedures and Stalking Horse Agreement is approved in all respects.

4.  The obligation to pay the Break-Up Fee, if any, shall survive the termination of the Stalking Horse Agreement and, until indefeasibly paid in full in cash, shall constitute an administrative expense of the Debtors' bankruptcy estates within meaning of section 503(b) of the Bankruptcy Code.

5.  The Debtors are authorized to conduct the Auction in accordance with the Auction Procedures. The Auction shall take place at 10:00 a.m. (prevailing Central Time) on July 27, 2009 at the offices of Meltzer, Purtill & Stelle LLC, 300 South Wacker Drive, Suite 3500, Chicago, Illinois 60606, or at such other date and time as the Seller establishes; provided that the Seller shall notify Actual Bidders of such other date and time. The Auction may be adjourned from time to time as the Seller determines in his discretion.

6.  The Sale Hearing shall be heard before this Court on July 29, 2009 at 10:00 a.m. to consider and approve the Winning Bid.

7.  Any objections to the entry of the Sale Order must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Northern District of Illinois; (c) set forth the name of the objecting party, the nature and amount of claims or interests held or asserted by the objecting party against the Debtors' estates or property, the basis for the objection, and the specific grounds therefor; and (d) be further served so that they are _received_ not less than three (3) business days prior to the date of the Sale Hearing upon: (i) counsel for the Debtors: Forrest B. Lammiman at Meltzer, Purtill & Stelle LLC, 300 South Wacker Drive, Suite 3500, Chicago, Illinois 60606-6704, fax number (312) 987-9854; Any bids, notices or information required to be given to the Seller under the Auction Procedures with a copy to (ii) counsel to the Agent: Rosanne Ciambrone and Matthew A. Olins, at Duane Morris LLP, 190 South LaSalle Street, Suite 3700, Chicago, Illinois 60603, fax number (312) 499-6701 and (iii) counsel to the Creditors' Committee: David K. Welch, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle Street, Suite 3705, Chicago, Illinois 60603.

8.  The Notice Procedures are approved in all respects with respect to the Auction Procedures, Auction, and Sale Hearing. Not later than five (5) business days after the entry of this Order, the Debtors, either directly or through their professionals, will cause a copy of the Auction Procedures and this Order to be served by first-class mail, postage prepaid, upon (a) all parties who have, at that time, requested notice in these cases pursuant to Bankruptcy Rule 2002, (b) all creditors listed on the Debtors' consolidated creditor matrix, and (c) all entities known to have expressed an interest in a transaction with respect to the Freeman Road Property.

9.  Notwithstanding the possible applicability of Federal Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective as of its entry.

Dated: June 30, 2009

_____
Honorable Eugene R. Wedoff
United States Bankruptcy Judge

3

DM3\1029969.1

# EXHIBIT A

## AUCTION PROCEDURES

## AUCTION PROCEDURES

Set forth below are the Auction Procedures (the "Auction Procedures") to be employed with respect to the prospective sale by Freeman Road Development, LLC (the "Seller") of approximately 164 acres of vacant land described on **Exhibit A** attached hereto (the "Freeman Road Property"). The Auction Procedures contemplate: (1) an auction of the Freeman Road Property (the "Auction") to be held in accordance with Section 9 hereof at the offices of Meltzer, Purtill & Stelle LLC, 300 South Wacker Drive, Suite 3500, Chicago, Illinois 60606-6704, on July 27, 2009 at 10:00 a.m. (prevailing Central time); (2) a hearing before the Bankruptcy Court to approve the sale (the "Sale") of the Freeman Road Property (subject to an anticipated easement in favor of Commonwealth Edison) to the Winning Bidder (as defined below) to be held on July 29, 2009 at 10:00 a.m.; (3) and the closing of the Sale to occur in accordance with Section 3 (or comparable provision of a Marked Contract (as defined below)) of the amended Real Estate Purchase Agreement (the "Stalking Horse Agreement") by and between the Seller and Joseph Valente (the "Stalking Horse Bidder" or the "Initial Bidder"), a copy of which is enclosed herewith. The Seller believes that the bid provided by the Stalking Horse Bidder (the "Initial Bid") represents the highest or otherwise best offer thus far received in 2009.

1. **Identification of Potential Bidders**. Any person or entity interested in bidding for the Freeman Road Property may obtain a copy of these Auction Procedures and the Stalking Horse Agreement by requesting such information from Forrest B. Lammiman at Meltzer, Purtill & Stelle LLC, 300 South Wacker Drive, Suite 3500, Chicago, Illinois 60606-6704, fax number (312) 987-9854, flammiman@mpslaw.com. Any bids, notices or information required to be given to the Seller under the Auction Procedures should be sent to the foregoing address with a copy to (a) Rosanne Ciambrone and Matthew A. Olins, at Duane Morris LLP, 190 South LaSalle Street, Suite 3700, Chicago, Illinois 60603, fax number (312) 499-6701, rciambrone@duanemorris.com and maolins@duanemorris.com, and (b) David K. Welch, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle Street, Suite 3705, Chicago, Illinois 60603, dwelch@craneheyman.com.

2. **Due Diligence**. The Seller and eleven affiliates are debtors in pending Chapter 11 Cases (the "Debtors"). The Debtors will provide and/or make available information regarding the Freeman Road Property to potential bidders as follows:

(a) <u>Information</u>. Upon receipt by the Seller of (i) information satisfactory to the Seller of a potential bidder's ability to close on a purchase of the Freeman Road Property and (ii) a confidentiality agreement in form and substance satisfactory to the Seller executed by the potential bidder, such potential bidder shall be provided with additional information regarding the Freeman Road Property, including (A) access to copies of a marketing package assembled by the Seller and its advisors with respect to the Freeman Road Property and (B) the opportunity, at the Seller's discretion and to the extent practicable under the circumstances, to meet with members of its management and to inspect the Freeman Road Property. In addition, reasonable efforts will be made to provide a potential bidder who has satisfied the

conditions of this Section 2(a) with such additional information that the Debtors conclude is both available and reasonably necessary or relevant to the formulation of such potential bidder's bid. The Seller may designate an employee or other representative of the Debtors to coordinate all reasonable requests for due diligence access from potential bidders.

(b)   <u>Completion of Due Diligence</u>.   Each bidder must complete its required due diligence prior to submission of its bid. The Seller shall not be obligated to furnish any due diligence information after the Bid Deadline.

3.   **Qualified Bidders**. Unless otherwise ordered by the Bankruptcy Court for cause shown, no bid for the Freeman Road Property will be considered unless, prior to or in conjunction with making such bid, but in any event no later than the Bid Deadline (as defined below), such bid is determined to be a Qualified Bid. A "<u>Qualified Bid</u>" is a bid that provides the Required Bid Documents (as defined in Section 6 below) and:

(a)   satisfies the requirements of Sections 2(a) and (b) above;

(b)   is not subject to any contingency based upon completion of or satisfaction with the results of due diligence review or investigation;

(c)   is accompanied by a good faith deposit delivered to the Seller, in readily available funds (the "<u>Good Faith Deposit</u>") in an amount equal to (i) $250,000.00 as to the Initial Bid or (ii) 10% of the purchase price set forth in the Marked Contract (as defined in Section 6 below) as to any other bid;

(d)   equals or exceeds $3,360,000.00 (the "<u>Minimum Bid</u>"), representing the sum of (i) the Purchase Price (as defined in the Stalking Horse Agreement and including Liabilities proposed to be assumed), (ii) the amount of the Break-Up Fee (defined below);

(e)   is timely received by the parties listed in the following Section 4 entitled "Time for Submission of Bids";

(f)   with respect to a Marked Contract, is on terms (taken as a whole) that are, in the Seller's sole determination, not materially more burdensome or conditional and no less favorable to the Debtors' estates than the terms of the Stalking Horse Agreement (taking into consideration the timing of such transaction); notwithstanding the foregoing, a Marked Contract will not be deemed to be less favorable to the Debtors' estates than the terms of the Stalking Horse Agreement solely due to the omission or modification of Section 13 of such Marked Contract;

(g)   is not submitted subject to or conditioned upon any financing contingency; and

(h)   is irrevocable until the closing of the Sale of the Freeman Road Property pursuant to the Winning Bid.

A potential bidder that in the sole discretion of the Seller satisfies the foregoing requirements shall be considered a "Qualified Bidder." Following each potential bidder's delivery of all of the materials and satisfaction of all the requirements set forth in subsections (a) through (h) above, the Seller shall notify such potential bidder in writing as to whether such potential bidder shall be considered a Qualified Bidder prior to the Auction. The Stalking Horse Bidder is deemed a Qualified Bidder and the Initial Bid is deemed a Qualified Bid.

4. **Time for Submission of Bids**. Any Qualified Bidder that desires to make a bid to purchase the Freeman Road Property and to become an Actual Bidder (as defined below in Section 7) shall deliver the Required Bid Documents (as defined in Section 6 below) so that they are actually received by counsel to the Debtors, Forrest B. Lammiman at Meltzer, Purtill & Stelle LLC, 300 South Wacker Drive, Suite 3500, Chicago, Illinois 60606, fax number (312) 987-9854, flammiman@mpslaw.com, not later than 5:00 p.m. (prevailing Central Time) on July 23, 2009 (the "Bid Deadline"), with copies concurrently delivered to (i) counsel to the Agent: Rosanne Ciambrone and Matthew A. Olins, at Duane Morris LLP, 190 South LaSalle Street, Suite 3700, Chicago, Illinois 60603, fax number (312) 499-6701, rciambrone@duanemorris.com and maolins@duanemorris.com, and (b) counsel to the Creditors' Committee: David K. Welch, Crane, Heyman, Simon, Welch & Clar, 135 South LaSalle Street, Suite 3705, Chicago, Illinois 60603, dwelch@craneheyman.com.

5. **Treatment of Deposits**. A bidder shall forfeit its Good Faith Deposit if (i) such bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein before the Bankruptcy Court approves the selection of the Winning Bidder (as defined in Section 9 below) or (ii) such bidder is the Winning Bidder and (A) modifies or withdraws its winning bid without consent before the consummation of the sale contemplated by the Marked Contract or (B) such bidder breaches the Marked Contract. If not forfeited pursuant to the terms of this Section 5, the Good Faith Deposit shall be promptly returned to a bidder in accordance with Section 10 herein.

6. **Form and Content of Bids**. Only a Qualified Bidder may submit a bid for the Freeman Road Property. In addition to the requirements set forth in Section 3 above, in order to constitute a Qualified Bid, a bid also must be submitted by the Bid Deadline and, unless the Seller otherwise agrees, in writing, must include the following (the "Required Bid Documents"):

a. Such Qualified Bidder's proposed real estate purchase agreement shall be in the form attached to the Motion as Exhibit C (and available electronically from the Debtors' counsel by request) except to the extent that it specifically sets forth any amendments or modifications to the Stalking Horse Agreement that such Qualified Bidder proposes, including price (the "Marked Contract"). The Marked Contract must provide for total consideration to the Debtors' estates (as determined by the Seller in its reasonable discretion) of an amount equal to or greater than the Initial Bid. All modifications or amendments to the Stalking Horse Agreement that are contained in the Marked Contract must be "red-lined" in order to be enforceable against the Debtors' estates.

    b. Written evidence of a commitment for financing or other evidence of the proposed Qualified Bidder's ability to perform under the Marked Contract and consummate the sale proposed in the Marked Contract within seven (7) business days of entry of an order approving the Sale and such other form of financial information reasonably requested by the Seller and its advisors.

    c. A statement that discloses the identity of each entity that will be participating in such bid, including any proposed designee(s). Further, each bid must provide sufficient financial and other information regarding both the Qualified Bidder and all other parties participating in the bid to satisfy the Seller with respect to the requirements enumerated in sections 363(m), 365(b) and 365(f)(2) of the Bankruptcy Code or as otherwise provided for herein; and

    d. A letter (i) stating that the Qualified Bidder has obtained all necessary corporate or other authority with respect to the submission of the bid, (ii) setting forth the identity of the bidder and the contact information for such Qualified Bidder, (iii) stating that such Qualified Bidder offers to purchase the Freeman Road Property (and other designated assets, if applicable) upon the terms and conditions set forth in the Marked Contract, (iv) summarizing the proposed consideration such Qualified Bidder proposes to pay under the Marked Contract (i.e., cash, assumed liabilities, and assets to be contributed by the bidder for the benefit of the Debtor's estates), (v) stating the form of the Good Faith Deposit (e.g., cashier's check or cash) made by such Qualified Bidder and (vi) further providing that such offer shall be irrevocable until the Sale of the Freeman Road Property to the Winning Bidder has been consummated.

Originals of the foregoing materials must be received by the Seller and served on the parties listed in Section 4 above on or before the Bid Deadline. The Stalking Horse Agreement shall be deemed a Qualified Bid.

  7. **Credit Bids**. The Agent may credit bid at the Auction ("Credit Bid"), for purposes of section 363(k) of the Bankruptcy Code, as follows:

    a. The Agent shall provide the Debtors with the Good Faith Deposit in cash as set forth in Section 3(c) hereof. In the event the Agent is the Winning Bidder (as defined below), the Break-Up Fee and all other closing costs, including any title fees and brokers' commissions, shall be deducted from the Agent's Good Faith Deposit and paid at Closing, with the balance of the Agent's Good Faith Deposit, if any, to be returned to the Agent following Closing[1].

    b. The minimum opening Credit Bid at the Auction shall be in an amount that equals or exceeds the Minimum Bid amount. *[handwritten: as it relates to the Freeman Road Property]*

---

[1] In the event that the Agent is the Winning Bidder, and the Agent's secured claim *[handwritten: as it relates to the Freeman Road Property]* or lien on the Freeman Road Property is finally disallowed, avoided, or subject to recovery under section 550 of the Bankruptcy Code or preservation of lien under section 551 of the Bankruptcy Code, the Agent shall pay an amount equal to the Winning Bid to the Debtors in cash within thirty (30) days of the disallowance of such claim or avoidance or preservation of such lien.

      c.      In order to enter a Credit Bid at the Auction, the Agent shall satisfy each of the prerequisites for participation at the Auction set forth herein, including, without limitation, submission of the documents required by Section 6 hereof. The Agent shall be deemed to have satisfied Sections 6(b) and 6(c) for purposes hereof.

      d.      If the Agent timely satisfies the requirements for a Credit Bid set forth in this Section 7, the Agent shall be deemed to (i) have submitted a Qualified Bid and (ii) be an Actual Bidder (as defined below) for purposes of the Auction.

    8.    **Actual Bidders May Participate In Auction**. Each Qualified Bidder who submits a Qualified Bid (an "Actual Bidder") shall be entitled to participate in the Auction. The Stalking Horse Bidder shall be deemed an Actual Bidder.

    9.    **The Auction**. If at least one Qualified Bid has been received which the Seller determines, in its sole discretion, is higher or otherwise better than the Stalking Horse Bid set forth in the Stalking Horse Agreement, the Seller shall conduct the Auction. Only Actual Bidders will be eligible to participate at the Auction. The Seller shall conduct the Auction at 10:00 a.m. (prevailing Central Time) on July 27, 2009 at the offices of Meltzer, Purtill & Stelle LLC, 300 South Wacker Drive, Suite 3500, Chicago, Illinois 60606, or at such other date and time as the Seller establishes; provided that the Seller shall notify Actual Bidders of such other date and time. The Auction may be adjourned from time to time as the Seller determines in his discretion.

At the commencement of the Auction, the Seller will announce the method by which the Auction shall be conducted. The opening bid at the Auction shall be the Minimum Bid, and each subsequent bid at the Auction shall exceed the previous bid by not less than $50,000.00; provided, however, that if the Initial Bidder participates in the Auction, the Initial Bidder may credit the Break-Up Fee and the maximum Expense Reimbursement potentially payable to it for purposes of calculating the minimum increase over the then-highest bid.

In the event that the Seller does not receive any Qualified Bids (other than the Stalking Horse Agreement) on or before the Bid Deadline, the Auction will not take place. In such an event, the Seller shall seek the Bankruptcy Court's approval of the Stalking Horse Agreement at the Sale Hearing.

    10.    **Selection of the Chosen Bid and Next Best Bid**. After the completion of the Auction, The Seller shall review and consider each of the Qualified Bids and all overbids placed at the Auction ("Overbids"), if any. The Seller in its sole discretion (after consultation with the Official Committee of Unsecured Creditors and the Agent) shall determine which of the Qualified Bids or Overbids constitutes the best bid. The bid so selected by the Seller shall be considered the "Chosen Bid" and the maker of that bid shall be considered the "Chosen Bidder." Further, the Seller in its sole discretion (after consultation with the Official Committee of Unsecured Creditors and the Agent) shall determine which of the Qualified Bids or Overbids constitutes the next best bid for the Freeman Road Property. The Qualified Bid or Overbid so selected by the Seller shall be considered the "Next Best Bid" and the maker of such bid shall be considered the "Next Best Bidder." At the conclusion of the Auction and after such selection, the Seller shall

inform the Actual Bidders present at the Auction of the decision regarding the Chosen Bid and Chosen Bidder and the Next Best Bid and Next Best Bidder.

At the Sale Hearing, the Seller shall request that the Bankruptcy Court approve the Sale to the Chosen Bidder pursuant to the terms of the Chosen Bid. Objections to the Sale shall be filed by a deadline to be established by the Bankruptcy Court. The Chosen Bid or Next Best Bid ultimately approved by the Bankruptcy Court shall be considered the "Winning Bid" and the maker thereof shall be considered the "Winning Bidder." The Marked Contract submitted by the Winning Bidder (or the Stalking Horse Agreement if the Stalking Horse Bidder becomes the Winning Bidder), as subsequently modified by agreement of the Winning Bidder and the Seller, if applicable, shall become the "Winning Agreement." The Seller may request further that the Bankruptcy Court approve the Sale of the Freeman Road Property to the Next Best Bidder pursuant to the terms of the Next Best Bid in the event that the consummation of the Sale does not take place on the Closing Date due to the Winning Bidder's inability or unwillingness to consummate the Sale. The Next Best Bid shall be irrevocable until the Sale of the Freeman Road Property to the Winning Bidder has been consummated.

11. **Bankruptcy Court Approval of the Winning Bid; Return of Good Faith Deposits**. The Bankruptcy Court shall hold the Sale Hearing on July 29, 2009 at 10:00 a.m. to consider and approve the Winning Bid. As to each Qualified Bidder (except with respect to the Winning Bidder and any bidders that forfeited their Good Faith Deposits under Section 5 above), the Seller shall return the Good Faith Deposits (together with interest thereon) within two (2) business days after the earliest of the following events: (a) the Seller withdraws the Sale Motion; (b) the Seller determines that the bid is not a Qualified Bid; (c) the Sale Hearing is concluded and the applicable bidder's bid is not designated the Winning Bid or the Next Best Bid and (d) the Sale has been consummated.

12. **Closing of Sale; Debtors' Right to Sell The Seller Assets to Next Best Bidder**. The consummation of the Sale shall take place at the offices of First American Title Company in Chicago, Illinois in accordance with Section 8 of the Stalking Horse Agreement (or comparable provision of a Marked Contract). If the consummation of the Sale does not take place within such time frame due to the Winning Bidder's inability or unwillingness to consummate the Sale, then the Seller shall have the right, without further order of the Bankruptcy Court, to sell the Freeman Road Property to the Next Best Bidder pursuant to the terms and conditions of the Next Best Bid.

13. **Business Judgment of The Seller**. The Seller reserves the right (a) to determine in the exercise of its business judgment whether the amendments and changes contained in each Marked Contract are acceptable as terms and conditions to sell, (b) to determine, in the exercise of its business judgment, which bid, if any, is the highest or otherwise best offer and (c) to reject at any time prior to entry of an Order of the Bankruptcy Court approving the proposed Sale, any bid which the Seller, in the reasonable exercise of its business judgment, deems to be (i) inadequate or insufficient or (ii) not in conformity with the requirements of the Bankruptcy Code or the Auction Procedures.

14. **Break-Up Fee**. If the Stalking Horse Agreement is terminated pursuant to Section 8.01(e)(vii), (viii) or (ix) thereof, Stalking Horse Bidder shall, without further court order, be entitled to receive (A) a fee equal to 2.5% of the purchase price actually paid by the Winning Bidder (the "Break-Up Fee").

In the event this Agreement is terminated pursuant to 8.01(e), (f) or (g), the Break-Up Fee shall be paid immediately upon such termination from the assets of the Seller's estate and shall have priority as an administrative expense in the Seller's Chapter 11 Cases under section 503(b) and 507(a) of the Bankruptcy Code.

# EXHIBIT A

## LEGAL DESCRIPTION OF REAL ESTATE

That part of the Northeast Quarter and that part of the Northwest Quarter of the Southeast Quarter of Section 16, Township 42 North, Range 7 East of the Third Principal Meridian, lying northerly of the northerly Right-of Way line of the Northwest Toll Highway Excepting therefrom that part of the Northwest Quarter of the Southeast Quarter, lying Easterly of a line that is 145.0 feet Westerly of, measured at right angles thereto, and parallel with the East Line of said Northwest Quarter of the Southeast Quarter, and also Excepting that part of the Northwest Quarter of the Southeast Quarter taken by the Illinois State Highway Commission as Parcel # N-4C-40.1 in the Township of Rutland, Kane County, Illinois.

And

That part of the Northwest Quarter of the Southeast Quarter of Section 16, Township 42 North, Range 7 East of the Third Principal Meridian lying northerly of the northerly right of way line of the Northwest Tollway and lying Easterly of a line 145 feet Westerly, measured at right angles and parallel with the East Line of the West Half of the Northeast Quarter and said line extended southerly (except that part taken for highway), in Rutland Township, in Kane County, Illinois.