## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, *et al.*, | ) | Case No. 09-17236 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing Date: July 29, 2009 at 10:00 a.m. |

## NOTICE OF MOTION

     PLEASE TAKE NOTICE that on **July 29, 2009 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Eugene R. Wedoff in the courtroom usually occupied by him, Courtroom No. 744, in the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois, or before any judge who may be sitting in his place or stead, and shall then and there present the **Motion for an Order Authorizing and Approving the Sale of the Freeman Road Property Pursuant to the Stalking Horse Agreement**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: July 24, 2009

THE KIRK CORPORATION AND ITS
AFFILIATED DEBTORS

By: /s/ David L. Kane
One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

## CERTIFICATE OF SERVICE

     I, David L. Kane, an attorney, certify that on July 24, 2009, I caused copies of the attached **Notice of Motion** and **Motion for an Order Authorizing and Approving the Sale of the Freeman Road Property to Pursuant to the Stalking Horse Agreement** to be served via electronic notice on the parties requesting notice and/or appearing in the Court's CM/ECF system.

{05919: 210: 00461250.DOC : }

                                            /s/ David L. Kane

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, *et al.*, | ) | Case No. 09-17236 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | Hearing Date: July 29, 2009 at 10:00 a.m. |

### MOTION FOR AN ORDER APPROVING THE SALE OF THE FREEMAN ROAD PROPERTY PURSUANT TO THE STALKING HORSE AGREEMENT

The Kirk Corporation and eleven of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned jointly administered cases (collectively, "Kirk" or the "Debtors")[1], hereby move this Court (the "Motion") for entry an order, substantially in the form attached hereto, approving the sale of the Freeman Road Property (as defined hereafter) pursuant to the Stalking Horse Agreement (as defined hereafter) to Joseph Purchaser ("Purchaser"). In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1. On May 12, 2009 (the "Initial Petition Date"), ten of the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), commencing the above-captioned Chapter 11 cases. On June 8, 2009 (the "Subsequent Petition Date"; the

---

[1] The Debtors are the following companies: The Kirk Corporation; Apple Creek Estates, LLC; Beacon Pointe West, LLC; Bloomfield Estates, LLC; Laurel Meadow, L.L.C.; The Lindens Venture, L.L.C.; Rockwell Place, LLC; Stonegate Village, LLC; Wing Pointe North, L.L.C; and Westland, LLC; Bloomfield West, L.L.C. (filed June 8, 2009); and Freeman Road Development, LLC (filed June 8, 2009). Two affiliates of Kirk are currently non-debtors: Rockwell Utilities, LLC; and Suncrest, L.L.C.

{05919: 210: 00461250.DOC : }

Initial Petition Date and Subsequent Petition Date are referred to herein as the "Petition Date") two additional affiliates of the Debtors, Bloomfield West, L.L.C. and Freeman Road Development, LLC ("Freeman Road"), filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(c) and 1108 of the Bankruptcy Code.

2.　An Official Committee of Unsecured Creditors (the "Creditors' Committee") was appointed in these cases on May 28, 2009.

3.　This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (M).

4.　The bases for the relief requested herein is section 363 of the Bankruptcy Code.

## BACKGROUND

5.　The Kirk Corporation was founded in 1978 as a production homebuilder. Currently, Kirk employs approximately 20 employees. Kirk's principal office is located in Streamwood, Illinois.

6.　Kirk, an Illinois corporation, is the sole member of eleven limited liability companies and is the manager and one of the members of two limited liability companies. Eleven of these limited liability companies now are also Debtors herein. One hundred percent (100%) of the stock of the holding company, Kirk, is owned by the Kirk Corporation Stock Ownership Plan and Trust, pursuant to two transactions, the first of which occurred in 1998 and the second of which occurred in 2002. Thus, the ultimate owners of all the Debtors are all of the employees of the Debtors.

7. The Debtors together currently have (i) four active residential developments in Bolingbrook, Hoffman Estates, Lakemoor, and Woodstock, (ii) five residential developments in Aurora, Bolingbrook, Huntley (unincorporated), New Lenox and Streamwood where construction of homes is complete, (iii) commercial property in Woodstock, and (iv) two unentitled parcels which are zoned for commercial use in Elburn (unincorporated) and Huntley (unincorporated). As of the Petition Date, the Debtors' aggregate assets total approximately $96,847,300 and the Debtors' aggregate liabilities total approximately $64,537,800, on a consolidated basis.

8. The Debtors' operational and profitability problems are principally due to the sharp and prolonged decline in the Chicago area homebuilding market. In 2006 and 2007, the Debtors built 328 homes and 305 homes, respectively, and had gross revenues of $113,310,092 and $105,898,302, respectively. In 2008, the Debtors built only 78 homes with gross revenues of $24,711,670.

### THE FREEMAN ROAD PROPERTY

9. Prior to June 2008, Freeman Road advised Noel Liston at Darwin Realty that Freeman Road was interested in selling certain property it owned consisting of approximately 164 acres located on Freeman Road, east of Route 47 in unincorporated Kane County (the "Freeman Road Property"). On or about April 8, 2009, Freeman Road received a proposal submitted by Darwin Realty describing terms of an offer being made on behalf of Component Plastics, which Freeman Road accepted on April 13, 2009.

10. On or about May 7, 2009, Freeman Road entered into a Real Estate Purchase Agreement with Purchaser for the sale of the Freeman Road Property (as amended, and together with all documents contemplated by the Real Estate Purchase Agreement, the "Stalking Horse

Agreement"). Purchaser offered to purchase the Freeman Road Property for $3,200,000.00 and has deposited earnest money in the amount of $250,000.00 in an escrow established with First American Title Insurance Company.

11. In addition, since before November 2007, Freeman Road has been negotiating Commonwealth Edison ("Com Ed") to grant an easement to Com Ed over the Freeman Road Property (the "Com Ed Easement"). Com Ed and Freeman Road have agreed on the scope and terms of the easement and Com Ed has agreed to pay Freeman Road an amount equal to $360,000.00 in consideration of the grant of easement.

12. The Stalking Horse Agreement acknowledges the negotiations with Com Ed and the anticipated grant of the Com Ed Easement. The Stalking Horse Agreement further provides that Purchaser if the Com Ed Easement is not recorded prior to the closing date of the Sale, that Purchaser enter into the Com Ed Easement and that Purchaser disclaims any rights to the consideration being paid by Com Ed, as long as such consideration is paid prior to July 31, 2010.

## RELIEF REQUESTED

13. By this Motion, the Debtors seek approval of the sale of the Freeman Road Property to the Purchaser free and clear of liens, claims and encumbrances pursuant to the Stalking Horse Agreement (the "Sale").

## BASIS FOR RELIEF

14. June 30, 2009, the Court entered the *Order Granting Motion for an Order (I) Authorizing the Debtors to Sell Certain Assets Outside of the Ordinary Course, (II) Approving Bid and Auction Procedures and (III) Approving the Form and Manner of Notices Thereof* [Docket No. 169], a true and accurate copy of which is attached hereto and incorporated herein as **Exhibit A**, authorizing the Debtors to sell approximately 164 acres located on Freeman Road,

east of Route 47 in unincorporated Kane County (the "Freeman Road Property") pursuant to the Auction Procedures set forth therein.

15. The Debtors received no Qualified Bids by the Bid Deadline. Accordingly, pursuant to Section 9 of the Auction Procedures, the Auction scheduled for July 27, 2009 is cancelled and the Debtors are authorized to sell the Freeman Road Property to the Purchaser pursuant to the terms of the Stalking Horse Agreement.

16. The Debtors may sell the Freeman Road Property free and clear of all liens, claims, interests, and encumbrances. Section 363(f) of the Bankruptcy Code governs "free and clear" sales of estate property. This section provides, in relevant part, that:

> [t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; such entity consents;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

17. The Debtors submit that one or more of sections 363(f)(2), (f)(3)[2] or (f)(5) are

---

[2] The Debtors are aware of three liens recorded against the Freeman Road Property. Two are a priority lien claims recorded pursuant to Illinois Mechanic's Lien Act, 770 ILCS 60/1, *et seq.*, by Mackie Consultants, LLC in the aggregate amount of $53,259.58.00, copies of which are attached hereto as **Exhibit B**, which the Debtors will pay at the Closing. All other proceeds of the Sale, less the amounts owed to Mackie Consultants, LLC and any closing costs attributable to the Debtors under the Stalking Horse Agreement, shall be paid to the Agent in full satisfaction of the Agent's claim against the Freeman Road Property. In the event the Agent's lien on the Freeman Road Property is finally disallowed, avoided, or subject to recovery under section 550 of the Bankruptcy Code or preservation of lien under section 551 of the Bankruptcy Code, the Agent shall pay any amounts received in connection with the Sale of the Freeman Road Property to the Debtors in cash within thirty (30) days of the disallowance of such claim or avoidance or preservation of such lien.

satisfied by the proposed Sale to Purchaser and as such the Debtors may transfer the Freeman Road Property free and clear of liens, claims and encumbrances.

18. Section 363(m) of the Bankruptcy Code, which pertains to a sale such as that proposed in this Motion, incorporates the term "good faith" as a requirement. Specifically, it provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property *in good faith,* whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

I 1 U.S.C. § 363(m) (emphasis added.).

19. A good faith purchaser under Section 363(m) has been defined by Courts to mean "one who purchases in 'good faith' and for 'value'." *Kabro Assocs. of West Islip, LLC v. Colony Hill Associates. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (*citing Cumberland Farms Dairy, Inc. v. National Farmers' Org. (Ire re Abbotts Dairies of Penn., Inc.)*, 788 F.2d 143, 147 (3d Cir. 1986)); *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992); *Badami v. Burgess (In re Burgess)*, 246 B.R. 352, *355-56 (B.A.P.* 8th Cir. 2000).

20. The Seventh Circuit has further stated that the "good faith" component of the test:

> ... speaks to the equity of [the bidder's] conduct in the course of sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*In re Rock Industries Machinery Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978).

21. The Stalking Horse Agreement was negotiated at arms' length over a period of over ten (10) months, with both parties represented by their own counsel. Although the Debtors engaged in discussions with other parties interested in acquiring certain of their assets, the Debtors submit that the Purchaser's proposal as contained in the Stalking Horse Agreement represents the highest and best offer for the Freeman Road Property. Further, neither Purchaser nor any of its owners or employees have economic interests in the Debtors, and the Debtors believe that all negotiations with the Purchaser have been at arms' length and in good faith.

22. Accordingly, the proposed Sale Order includes a provision that Purchaser is a "good faith" purchaser within the meaning of section 363(m).

## NOTICE

23. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) counsel for JPMorgan Chase, N.A., as Agent for the prepetition Lenders; (c) counsel to the Official Committee of Unsecured Creditors; and (d) all parties filing appearances and/or requesting notice in these cases. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

[Signature page to follow]

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the sale of the Freeman Road Property to the Purchaser free and clear of liens, claims and encumbrances pursuant to the Stalking Horse Agreement and such other relief as the Court may deem just and appropriate.

Dated: July 24, 2009

Respectfully submitted,

**THE KIRK CORPORATION
AND ITS AFFILIATED DEBTORS**

By: /s/ Forrest B. Lammiman
     One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{05919: 210: 00461250.DOC : }