UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                        )    Chapter 11
                                              )
THE KIRK CORPORATION, et al.,                 )    Case No. 09-17236
                                              )    (Jointly Administered)
        Debtors.                              )
                                              )    Honorable Eugene R. Wedoff
                                              )

## ORDER EXTENDING FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

This matter coming before the Court on the motion (the "Motion")[1] for approval and entry of an Order Authorizing the Extended Use of Cash Collateral and Adequate Protection made by The Kirk Corporation and the other jointly administered debtors in these cases, as debtors and debtors-in-possession (collectively, the "Debtors")[2]; hearings having been held to consider Debtors' use of cash collateral and grant of adequate protection as provided under sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); notice of the Motion having been given to: (a) the Office of the United States Trustee; (b) Agent for the Lenders, and its counsel; (c) the Official Committee of Unsecured Creditors, and its counsel and (d) parties filing appearance and/or requesting notice in these bankruptcy cases; adequate and appropriate notice of the Motion having been given in accordance with Bankruptcy Rule 4001(b); the Court having considered the evidence presented

---

[1] Capitalized terms used and not defined herein shall have the meanings set forth in the Motion.

[2] The Debtors are the following companies: The Kirk Corporation; Apple Creek Estates, LLC; Beacon Pointe West, LLC; Bloomfield Estates, LLC; Laurel Meadow, L.L.C.; The Lindens Venture, L.L.C.; Rockwell Place, LLC; Stonegate Village, LLC; Wing Pointe North, L.L.C; and Westland, LLC; Bloomfield West, L.L.C. (filed June 8, 2009); and Freeman Road Development, LLC (filed June 8, 2009). Two affiliates of Kirk are currently non-debtors: Rockwell Utilities, LLC; and Suncrest, L.L.C.

{05919: 210: 00459700.DOC : }

at the hearings and the statements of respective counsel for the Debtors, JPMorgan Chase, N.A., as agent (the "Agent") for the lenders (the "Lenders"), and other parties in interest; the Court, being duly advised in the premises, hereby makes the following findings of fact and conclusions of laws :

**IT IS HEREBY ORDERED THAT**:

1. The Motion is hereby GRANTED to the extent and as set forth herein below.

2. Subject to the terms and conditions of this Cash Collateral Order, the Debtors are hereby authorized to use Cash Collateral to pay wages, salaries, and operating expenses incurred from the Petition Date through and including September 4, 2009 (the "Cash Collateral Period") as set forth in the Budget attached hereto as **Exhibit A**.

3. The Debtors are authorized, and title insurers are permitted, to close sales of residential homes in the ordinary course during the Cash Collateral Period. Net Proceeds/Construction Costs (as hereinafter defined) of such sales shall be deposited in an escrow account (the "Net Proceeds/Construction Costs Escrow Account") and held at First American Title Insurance Company ("First American"). As used herein, the term "Net Proceeds/Construction Costs" shall mean the gross sales price for each home, less only customary and reasonable closing costs incident to each sale and consistent with past practice, such as transfer taxes, real estate taxes, title and escrow fees, buyer incentives and other buyer credits not otherwise reflected in the purchase price, and reasonable brokers commissions (the "Closing Costs").[3] Any valid liens held prior to closing against the property being sold shall attach to the Net Proceeds/Construction Costs in accordance with their respective priorities under state law. First American shall maintain its customary separate accounting summary with

---

[3] Closing Costs shall not exceed the amount set forth on the Budget, plus the payment of real estate taxes that are payable at home closings, which payment of real estate taxes shall be capped at $50,000.00 in the aggregate.

respect to each such closing and shall continue to separately account for the proceeds of each home closing, even if only a portion of the closing proceeds that are held in the Net Proceeds/Construction Costs Escrow Account are classified as net proceeds in First American's separate accounting summary for a home closing. The automatic stay in place pursuant to Section 362 of the Bankruptcy Code is hereby modified, as necessary, in order to allow First American to comply with the terms of this Interim Cash Collateral Order.

4. The disbursements made pursuant to the Budget shall be for expenses payable (other than Closing Costs)[4], or incurred but not paid or payable, during the Interim Cash Collateral Period, and shall be capped at $1,850,000.00 (the "Permitted Disbursements"). Such Permitted Disbursements shall be as set forth in the Budget, and shall be divided between the Debtors and Lenders pursuant to the following requirements:

(a) The Debtors' portion of the Permitted Disbursements under the Budget shall be drawn from its segregated account at Charter National Bank & Trust[5] and shall be capped at $350,000.00;

(b) The other portion of the Permitted Disbursements under the Budget shall be drawn from the Net Proceeds/Construction Costs Escrow Account and shall be capped at $1,500,000.00 for the period through and including September 4, 2009. No other amounts shall be drawn from the Net Proceeds/Construction Costs Escrow Account unless and until authorized by express order of the Court.

(c) Distributions from the Net Proceeds/Construction Costs Escrow Account shall be made by First American as follows: (i) the Debtors and the Lenders shall equally

---

[4] While Closing Costs are included in the Budget, the Closing Costs are deducted from gross sales proceeds and paid at the closing of each home sale, and are not a Permitted Disbursement.
[5] The Debtors, the Agent and the Lenders each reserve all rights with respect to liens or other claims against the funds in the Charter National Bank & Trust account.

share the first $550,000.00 in aggregate disbursements and incurred costs of the Permitted Disbursements; (ii) the Debtors shall be solely responsible for the next $75,000.00 in aggregate disbursements and incurred costs of the Permitted Disbursements; and (iii) thereafter, the Net Proceeds/Construction Costs Escrow Account shall be the source of all additional amounts up to $1,225,000.00 in aggregate disbursements and incurred costs of the Permitted Disbursements.

(d) In order for the Debtors to use Lenders' Cash Collateral as set forth in Paragraph 4(b) above:

    (i) The Debtors shall submit a series of certified statements to First American and Lenders which shall set forth the Permitted Disbursements made by the Debtors pursuant to the Budget (each, a "Certified Statement").

    (ii) The Lenders shall have three (3) business days from receipt of a Certified Statement to object in writing to the items contained therein, identifying the specific items objected to and stating with reasonable specificity the grounds for such objection (each, a "Lenders' Objection"), provided that the Certified Statement is received by the Lenders on or before 4:00 p.m. (CDT). Should the Certified Statement be received by the Lenders after 4:00 p.m. (CST), the Lenders shall have until the fourth (4th) business day from receipt to file the Lenders' Objection. Any Lenders' Objection shall be provided to the Debtors and First American via electronic mail using the following electronic mail addresses:

jcarroll@kirkhomes.com and FLammiman@mpslaw.com; and mcann@firstam.com.

(iii) In accordance with Paragraph 4(c) above, if no Lenders' Objection is timely received by the Debtors and First American, First American shall disburse from the Net Proceeds Escrow Account to the Debtors fifty cents (50¢) for every dollar ($1.00) requested in such Certified Statement until $275,00.00 has been disbursed from the Net Proceeds Escrow Account. If no Lenders' Objection is timely received by the Debtors and First American, and after the Debtors have met their disbursement cap of $350,00.00, First American shall disburse from the Net Proceeds Escrow Account to the Debtors one dollar ($1.00) for every dollar ($1.00) requested in such Certified Statement, provided however, such disbursements from the Net Proceeds Escrow Account shall not exceed $1,500,000.00, in the aggregate, during the Cash Collateral Period.

(iv) If a Lenders' Objection is timely received by First American and the Debtors, First American shall make no disbursements on the disputed items contained in such Certified Statement unless and until ordered to do so by the Court, or until such time as such Lenders' Objection is withdrawn in writing by the Lenders. Notwithstanding anything contained herein to the contrary, First American shall make disbursements, in accordance with Paragraph 4(d)(iii) above, to or as directed by the Debtors on all non-disputed

items in a Certified Statement pending the resolution of the Lenders' Objection on the disputed items in such Certified Statement.

(v) Notwithstanding anything contained herein to the contrary, the pendency of a Lenders' Objection to a specific Certified Statement shall not delay or otherwise prevent First American from making disbursements, in accordance with the terms hereof, on any other Certified Statement for which no Lenders' Objection has been received.

5. Except as may be ordered by the Court, no payments shall be made on account of any amounts payable to persons and entities furnishing labor, materials, fixtures or services incurred prior to the Petition Date, (the "Prepetition Construction Claims"), nor shall the Prepetition Construction Claims be deducted from gross sales proceeds for the purpose of calculating the Net Proceeds/Construction Costs to be deposited in the Net Proceeds/Construction Costs Escrow Account. All of the rights of the Debtors and any party asserting any of the Prepetition Construction Claims to seek authority from this Court to pay any Prepetition Construction Claims are expressly reserved.

6. During the Interim Cash Collateral Period, the Debtors shall provide the Agent with such information as the Agent may reasonably request concerning the Debtors' business operations and the financial condition of the Debtors, with the same form, guidance, accuracy and detail as that previously provided by the Debtors prior to commencement of these cases, including, without limitation, weekly statements of expenditures. Further, by 12:00 p.m. Wednesday on a biweekly basis beginning on May 27, 2009, the Debtors shall provide the

Lenders with copies of any invoices or other supporting documents for items paid during the previous two weeks, including, without limitation: (a) actual to budget reports, (b) weekly liquidity rolls by bank account, (c) detailed accounts payable runs, (d) listings of sales, closings and closing statements and (e) construction progress reports. The Agent and its advisors, including Conway MacKenzie, and Dunleavy, shall have reasonable access to the Debtors' books and records during normal business hours.

7. Notwithstanding anything contained in this Interim Cash Collateral Order or the Budget to the contrary, the Debtors shall not be entitled to use the Lenders' Cash Collateral for any new home starts, including commencing construction of new homes or units, without further order of the Court.

8. Nothing herein shall require or be deemed to require the Agent or the Lenders to make a loan or extend other financing or financial accommodations to or for the benefit of any of the Debtors.

9. The provisions of this Cash Collateral Order shall be binding upon and inure to the benefit of the Agent, the Lenders, the Debtors and their respective successors and assigns (including any trustee hereinafter appointed as a representative of any of the Debtors' estates).

10. The provisions of the Cash Collateral Order shall be effective immediately upon entry of this Cash Collateral Order, and the Clerk of the Court is hereby directed to forthwith enter this Cash Collateral Order on the docket of this Court maintained in regard to these Cases.

Dated: ~~July~~ Aug 12, 2009

Honorable Eugene R. Wedoff
United States Bankruptcy Judge

**EXHIBIT A**

<u>BUDGET</u>

{05919: 210: 00459700.DOC : }

THE KIRK CORPORATION
Combined 17 Week Disbursement Budget

7/23/09

| Week Ending | Weeks 1-10 Actual | Week 11 7/24/2009 | Week 12 7/31/2009 | Week 13 8/7/2009 | Week 14 8/14/2009 | Week 15 8/21/2009 | Week 16 8/28/2009 | Week 17 9/4/2009 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Overhead Disbursements [1] | 342,885 | 34,621 | 49,900 | 35,800 | 51,340 | 33,600 | 49,900 | 44,800 | 642,846 |
| Payroll [2] | 268,436 | 0 | 53,300 | 0 | 53,300 | 0 | 53,300 | 26,650 | 454,986 |
| Professional Fees [3] | 30,971 | 384,339 | 0 | 0 | 290,000 | 0 | 0 | 250,000 | 955,310 |
| Total Disbursements on Behalf of Debtors | 642,292 | 418,960 | 103,200 | 35,800 | 264,640 | 33,600 | 103,200 | 231,450 | 2,053,142 [4] |

Notes:

[1] Excludes real estate taxes
[2] Excludes severance payments
[3] Debtor's Professionals & Counsel for any Creditors Committee
[4] In the event of a shortfall, the Debtors shall make available an additional $285,000, made up of (i) an additional $100,000 from the Charter Account and additional $60,000 from interest funds, and (ii) approximately $125.00 from the retainers held by Debtors' counsel

up to