## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | Bankruptcy No. 09-17236 |
| THE KIRK CORPORATION, *et al.* | ) | (Jointly Administered) |
| | ) | |
| | ) | Judge Carol A. Doyle |
| Debtors. | ) | |
| _____ | ) | |

### OBJECTION OF JPMORGAN CHASE BANK, N.A., AS AGENT AND LENDER TO (1) MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE AND REQUEST FOR PAYMENT AND (2) MOTION TO AUTHORIZE DEBTORS' SURCHARGE OF SECURED CREDITORS' COLLATERAL PURSUANT TO 11 U.S.C. § 506(c) WITH RESPECT TO THE SALE OF THE FREEMAN ROAD PROPERTY

JPMorgan Chase Bank, N.A., as Agent for the prepetition lenders (the "*Lenders*") of the Kirk Corporation and certain of its affiliates, and as Lender (in both capacities, "*JPMorgan*")[1], by and through its undersigned counsel, hereby files this objection (the "*Objection*") to (1) the Motion of Darwin Realty & Development ("*Darwin*") for Allowance of Administrative Expense and request for Payment (the "*Administrative Expense Motion*") and (2) the Debtors' Motion to Authorize Surcharge of Secured Creditors' Collateral Pursuant to 11 U.S.C. § 506(c) with Respect to the Sale of the Freeman Road Property (the "*506(c) Motion*").  In support of its Objection, JPMorgan states as follows:

### Preliminary Statement

1.    On June 12, 2009 The Kirk Corporation and its affiliated debtors and debtors-in-possession in the above captioned case (collectively, the "*Debtors*") filed a Motion for an Order

---

[1]    JPMorgan and the Lenders are at times collectively referred to herein as the "Lenders" for ease of reference.

(i) Authorizing the Debtors to Sell Certain Assets Outside of the Ordinary Course, (ii) Approving

Bid and Auction Procedures, and (iii) Approving the Form and Manner of Notices Thereof (the

"*Sale Motion*").  The Sale Motion related to the sale of approximately 164 acres of vacant land

(the "*Freeman Road Property")* by Freeman Road Development, LLC ("*Freeman*"), one of the

debtors herein.  JPMorgan filed a limited objection to the Sale Motion, one of the grounds being

that the proposed payment of a commission to Darwin was not appropriate as Darwin was, at

best, a general unsecured creditor of the Debtor as the Debtors did not retain Darwin as a

professional and its commission was earned pre-petition.  This Court upheld the limited

objection of JPMorgan.

2.    Darwin has since filed the Administrative Expense Motion, seeking payment of

its broker's commission as an administrative expense, and the Debtors have filed their 506(c)

Motion, seeking payment of Darwin's broker's commission as well as its own costs and

attorneys' fees associated with the sale of the Freeman Road Property.  Both Motions should be

denied.

## **DISCUSSION**

3.    On May 12, 2009 (the "*Petition Date*"), The Kirk Corporation and eight of its

affiliates filed voluntary petitions for relief under chapter 11 of title 11 of United States Code, 11

U.S.C. § 101 *et seq.* (the "*Bankruptcy Code*").  Two additional debtors, including Freeman Road

Development, LLC (the Seller of the Freeman Road Property), filed voluntary petitions on June

8, 2009 (the "*Subsequent Petition Date*").

4.    On May 28, 2009, the Office of the United States Trustee appointed an Official

Committee of Unsecured Creditors (the "*Creditors' Committee*").

DM3\1114024.1

5.      As of the Petition Date, the Debtors were indebted to the Lenders in the amount of at least $52,031,091, plus, without limitation, interest, fees, expenses, and costs that continue to accrue (to the extent permitted by the Bankruptcy Code) pursuant to the terms of a loan ("*Loan*"), evidenced by, among other things, an Amended and Restated Borrowing Base Revolving Line of Credit Agreement dated as of August 25, 2006 (as amended from time to time) and certain related loan documents, mortgages and security agreements.

## ARGUMENT

### A.      Darwin is Not Entitled to an Administrative Expense

6.      It is well established that real estate brokers are professionals who must first be retained and their employment approved pursuant to section 327(a) in order to receive compensation for their services under sections 330 and 331 of the Bankruptcy Code.  *In re Begun,* 162 B.R. 168, 175 (Bankr. N.D. Ill. 1993).   Here, the Debtors have not filed an application pursuant to Federal Rule of Bankruptcy Procedure 2014(a) to retain Darwin, nor has Darwin submitted a verified statement as required by Rule 2014(a).   Because Darwin's retention has not been approved by the Court, it is not entitled to the payment of a broker's commission as an administrative expense.

7.      Where a buyer is procured pre-petition, because real-estate brokerage commission agreements are performed when a buyer is procured, such commissions are limited to general unsecured claim status and *may not be allowed as an administrative expense claim.  In re HSD Venture*, 178 B.R. 831, 833-834 (Bankr. S.D. Ca. 1995) (commissions could not be allowed as administrative expenses); *In re Precision Carwash Corp.*, 90 B.R. 34, 38 (Bankr. E.D.N.Y. 1988) (where broker had procured buyer pre-petition, broker was not entitled to administrative priority for brokerage fee); *In re Moskovic*, 77 B.R. 421, 423 (Bankr. S.D.N.Y. 1987) (where

DM3\1114024.1

broker had obtained buyer pre-petition, it was a prepetition creditor holding a general unsecured claim against the estate and did not have an administrative expense priority claim).

8.      In *In re Charter Co*., 52 B.R. 267, 271 (Bankr. M.D. Fla. 1985), the court looked to three principles of law to conclude that a broker's commission was a general unsecured claim not entitled to administrative priority:  (1) One who fully performs under a contract pre-petition is not entitled to an administrative expense, even though his services may result in a direct benefit to the estate after the  petition date; (2) Notwithstanding that the broker's commission may be payable post-petition, the fee is earned when the broker produces a purchaser ready, willing and able to purchase the property on terms acceptable to the seller; and (3) A broker's commission  does not qualify as an administrative expense if the broker has not been authorized by the Court to render services to the estate.   Here, as in *Charter*, all three principles indicate that Darwin's claim is not entitled to administrative expense priority.  *See also In re Gardinier, Inc.*, 831 F.2d 974, 978 (11th Cir. 1987) (broker's commission was general unsecured claim); *In re Munple, Ltd*, 868 F.2d 1129 (9th Cir. 1989) (brokerage commission agreements are not executory contracts where the purchaser was identified pre-petition).

9.      In addressing whether brokerage commissions should be allowed as a post-petition administrative expense, the court in *HSD Venture*, 178 B.R. 831, determined that the answer is found in the issue of employment, noting that real estate brokers are required to be employed by an estate pursuant to section 327(a) in order to be compensated from property of the estate.  178 B.R. at 834.  The *HSD Venture* court noted that because the realtors in question were pre-petition creditors and therefore not disinterested as required under section 327(a), they could not be employed by the estate post-petition.   Accordingly, the issue became:

> whether a pre-petition unsecured creditor, who cannot be employed by the estate, can nevertheless provide post-petition services to an estate and have a claim for

those services allowed as an administrative expense. This Court concludes the answer is in the negative. To hold otherwise would eviscerate §§ 327, 101(14) and the policies of control of employment of professionals and the requirement of their disinterestedness, including that they are not creditors of the estate.

*Id*.

10.     Darwin was not retained by the Debtors' estates.  It identified the purchaser of the Freeman Road Property pre-petition, and the contract for the sale of the Freeman Road Property was entered into pre-petition.  Darwin's claim for a brokerage commission on the Sale is  not entitled to administrative expense priority.

**B.     The Debtors' 506(c) Motion Should Be Denied**

11.     Section 506(c) provides that a trustee or debtor in possession may "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem taxes with respect to the property."  11 U.S.C. § 506(c). Section 506(c) permits a trustee or debtor-in-possession "to recover *administrative expenses* from a secured creditor's collateral." Alan N. Resnick & Harry J. Sommer, 4 COLLIER ON BANKRUPTCY ¶ 506.05 (15th ed. rev. 2001).  It is intended to be an exception to the general rule that "the expenses associated with administering a bankruptcy estate are not chargeable to a secured creditor's collateral or claim, but must be borne out of the unencumbered assets of the estate." *Id.*

12.     Because, as is set forth above, the commission due to Darwin is not an administrative expense of the Debtors' estates, and is instead a general unsecured claim, it cannot be charged back to the Lenders' collateral under section 506(c).  The cases cited by the Debtors are inapposite.  In *In re Saybrook Manufacturing Co.*, 130 B.R. 1013, 1016 (Bankr. M.D. Ga. 1991), the court had already entered an order approving the retention of the broker, as well as an

order holding that the broker was entitled to compensation under section 330 of the Bankruptcy Code. The only issue was the source from which the fee would be paid.

13.     The other cases cited by the Debtors similarly do not aid their cause: *In re Trim-X, Inc.*, 695 F.2d 296 (7th Cir. 1982) (trustee sought expenses for use and occupancy, security costs and utility charges); *In re George*, 62 B.R. 671 (Bankr. C.D. Ill, 1986), *aff'd*, 78 B.R. 886 (C.D. Ill. 1987) (debtors sought reimbursement of crop expense); *In re Nowicki*, 202 B.R. 729 (Bankr. N.D. Ill. 1996) (trustee's expenses in avoiding fraudulent transfer and bringing property back into the estate allowing it to be sold were chargeable against the sale proceeds); *In re Lunan Family Restaurants L.P.*, 192 B.R. 173 (Bankr. N.D. Ill. 1996) (court found that secured creditors could be surcharged for utilities, withholding and unemployment taxes and health insurance claims that debtors paid or incurred to keep operating until a sale); *In re MMS Builders, Inc.*, 101 B.R. 426, 427 (D.N.J. 1986) (auctioneer was appointed by court to conduct a public auction of real property); *In re Chicago Lutheran Hospital Assoc.*, 89 B.R. 719 (Bankr. N.D. Ill. 1988) (issue was whether attorneys fees could be charged against secured creditor's collateral; court held that majority of services provided by debtor's counsel did not benefit secured creditors). None of these cases support the grant of a section 506(c) charge against a secured creditor's collateral where the underlying expense sought to be charged is neither post-petition nor entitled to administrative expense priority.

14.     Contrary to the assertions of the Debtors, JPMorgan never agreed to pay Darwin's commission, nor did it implicitly agree that Darwin's services were beneficial when it failed to credit bid. As the Debtors well know, the Lenders never consented to a sale of the Freeman Road Property. The Debtors brought Freeman into bankruptcy for the sole reason that the Lenders refused to consent to the proposed sale outside of bankruptcy. The Lenders believed

6

(and continue to believe) that the Freeman Road Property is worth more than the purchase price and that it would have been a better decision to hold the property than to sell it at the price for which it was sold.  Once Freeman was put into bankruptcy and the Sale Motion filed, the Lenders determined that the cost of opposing the sale in light of the chances of success given the "business judgment" standard did not warrant a fight.  While the Lenders did in fact insist on the right to credit bid, they were unable to do so on account of a number of regulatory and internal procedural concerns.  The decision not to credit bid had nothing to do with a determination that the sale conferred a benefit upon them.  Debtors' counsel was informed of this.  The issues presented in the Administrative Expense and 506(c) Motions were not presented previously, and the provisions of the Bankruptcy Code, including sections 327 and 506(c), apply regardless.

**CONCLUSION**

WHEREFORE, for the reasons stated above, JPMorgan respectfully requests that this Court deny the Administrative Expense Motion and the 506(c) Motion.

Respectfully Submitted,

**JPMORGAN CHASE BANK, N.A., AS
AGENT AND LENDER**

By: /s/ Rosanne Ciambrone
    One of its Attorneys

Rosanne Ciambrone (A.R.D.C. #6199456)
Richard A. Darke (A.R.D.C. #6255810)
Matthew A. Olins (A.R.D.C. #6275636)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois  60603
Telephone:  (312) 499.6700
Facsimile:  (312) 499.6701

*-and-*

Joel M. Walker (Admitted Pro Hac Vice)
DUANE MORRIS LLP
600 Grant Street, Suite 5010
Pittsburgh, Pennsylvania 15219-2811
Telephone:  (412) 497-1042
Facsimile:  (412) 202-4706

DM3\1114024.1