# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE KIRK CORPORATION, *et al.*, | ) | Case No. 09-17236 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Carol A. Doyle |
| | ) | |
| | ) | |

## DEBTORS' FOURTH AMENDED PLAN OF REORGANIZATION

Forrest B. Lammiman
David L. Kane
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606-6704
Tel: (312) 987-9900
Fax: (312) 987-9854

Counsel for The Kirk Corporation
and Its Affiliate Debtors

Dated: September 18, 2009

{05919: 210: 00476114.DOC : }

The Kirk Corporation and its Affiliate Debtors, as Debtors and Debtors-In-Possession, propose the following Fourth Amended Plan of Reorganization pursuant to section 1121 of the Bankruptcy Code. Subject to certain restrictions set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 and this Plan, The Kirk Corporation and its Affiliate Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

The Debtors' Cash and other assets will be distributed or otherwise applied as set forth in this Plan in full and complete satisfaction and discharge of the Claims against the Debtors, except as otherwise expressly provided herein.

## ARTICLE 1
## DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings specified below:

1.1.   "**Administrative Claim**" means a Claim under section 507(b) of the Bankruptcy Code, or a Claim under section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Cases including, without limitation, any actual and necessary expenses of operating the businesses of the Debtors or preserving the Estates, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under sections 330, 331, or 503 of the Bankruptcy Code.

1.2.   "**Administrative Claims Bar Date**" shall have the meaning set forth in Section 2.5 of this Plan.

1.3.   "**Adversary Proceeding Against the Lenders**" means *The Kirk Corporation v. JPMorgan Chase Bank, N.A. et al.,* Adversary Case No. 09-00481 pending in the Chapter 11 Cases, and all pleadings and papers filed at any time in connection therewith.

1.4.   "**Affiliate Debtor(s)**" means, individually and collectively, the chapter 11 Debtors listed on the signature pages hereto other than Kirk.

1.5.   "**Affiliate Debtor Interests**" means any membership interest in an Affiliate Debtor outstanding on the Effective Date, together with the rights of any Person or Entity to purchase or demand the issuance of such ownership interest, including (a) conversion, exchange, voting, participation, and dividend rights; (b) liquidation preferences; (c) membership options, warrants, and put rights; and (d) appreciation rights.

1.6.   "**Agent**" means JPMorgan Chase, N.A., as Agent for the Lenders under the Credit Agreement.

1.7.   "**Allowed Claim**" or "Allowed Administrative Claim" means: (a) any Claim or Administrative Claim, proof of which was Filed with the Bankruptcy Court on or before the applicable Bar Date, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been Filed within the applicable period of limitation (if any) for objection to Claims set forth in this Plan or as otherwise fixed by the Bankruptcy Court,

{05919: 210: 00476114.DOC : }

or as to which any objection has been determined by an order or judgment of the Court (allowing such Claim in whole or in part) that is no longer subject to appeal or certiorari proceedings, and as to which no appeal or certiorari proceeding is pending, or (b) a Claim or Administrative Claim that is allowed (i) in a Final Order or (ii) pursuant to the terms of this Plan. In accordance with 11 U.S.C. § 502(d), no Claim held by any party that is subject to an Avoidance Action shall be an Allowed Claim or Allowed Administrative Claim until such time as the avoidable transfer that is the subject of such Avoidance Action is returned or a Final Order has been entered (x) approving the compromise and settlement of the Avoidance Action or (y) determining that no avoidable transfer exists.

1.8.    "**Avoidance Actions**" means Causes of Action arising under sections 542, 544, 545, 547, 548, 549, 550, 551, 553 or other sections of the Bankruptcy Code.

1.9.    "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

1.10.    "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Illinois or such other court with jurisdiction over the Chapter 11 Cases.

1.11.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended to the extent such amendment is applicable to the Chapter 11 Cases.

1.12.    "**Bar Date**" means the dates set forth in this Plan or otherwise designated by the Bankruptcy Court as the last date for filing proofs of Claim, of Interest, or of Administrative Claim, as the case may be, against the Debtors.

1.13.    "**Business Day**" means any day other than a Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006(a).

1.14.    "**Cash**" means cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.15.    "**Cash Collateral Order**" means the Final Order Authorizing Use of Cash Collateral and Adequate Protection entered by the Bankruptcy Court on June 23, 2009 [Docket No. 155], as it may be amended from time to time through the Effective Date.

1.16.    "**Causes of Action**" means all claims and causes of action now owned or hereafter acquired by the Debtors, either individually or collectively, whether arising under any contract, the Bankruptcy Code, or other federal or state law, including, but not limited to, all litigation pending as of the Effective Date in any jurisdiction in which any of the Debtors is a plaintiff, defendant or other party, and all other adversary proceedings and lawsuits.

1.17.    "**Chapter 11 Case(s)**" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

1.18.  "**Claim**" means a claim as defined in section 101(5) of the Bankruptcy Code.

1.19.  "**Claims Objection Deadline**" shall have the meaning set forth in Section 7.5 of this Plan.

1.20.  "**Class**" means a category of Holders of Claims or Interests.

1.21.  "**Collateral**" means all collateral securing the obligations of the Debtors or the Reorganized Debtors to the Lenders pursuant to the New Credit Agreement or the New 1111(b)(2) Secured Note.

1.22.  "**Committee**" or "**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases on May 28, 2009 pursuant to section 1102 of the Bankruptcy Code.

1.23.  "**Confirmation Date**" means the date of entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.24.  "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as the same may thereafter be modified by the Bankruptcy Court.

1.25.  "**Contractors**" means any direct contractor retained by any of the Debtors at any time to perform work, provide services relating to, or provide materials for, any Home.

1.26.  "**Contributed Allocation of the New Equity**" means shares in the Reorganized Kirk in the same number as the number of the unredeemed shares reflected by the unpaid principal balance of such Holder's ESOP Note to effect the treatment of Allowed Class 6 Claims for those Holders who elect treatment under subsection 4.8(ii).

1.27.  "**Creditor**" means a Holder of Claim(s) against the Debtor(s), either individually or collectively, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Estate(s), either individually or collectively, of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.28.  "**Debtor(s)**" means, individually, Kirk or any of the Affiliate Debtors and, collectively, all of such Entities.

1.29.  "**Disclosure Statement**" means that certain disclosure statement approved by the Bankruptcy Court on September 2, 2009 as containing adequate information in accordance with section 1125 and 1126 of the Bankruptcy Code, all appendices thereto and any amendments or modifications thereof.

1.30.  "**Disputed Claim**" or "**Disputed Administrative Claim**" means any Claim or Administrative Claim (i) as to which a timely objection or request for estimation in accordance with the Bankruptcy Code and Bankruptcy Rules, or otherwise disputed in accordance with applicable law, has been interposed and (ii) that has not been withdrawn or determined by a Final Order.

1.31. "**Disputed Claim Reserve**" means a reserve, if any, of Cash for the relevant Class, established pursuant to this Plan for the payment or other satisfaction of Disputed Claims that are Allowed after the Effective Date.

1.32. "**Distribution(s)**" means the distribution of Cash or other Property to be made in accordance with this Plan.

1.33. "**Effective Date**" means the Business Day this Plan becomes effective, as provided in Article 9 hereof.

1.34. "**Entity**" shall have the meaning set forth in section 101 of the Bankruptcy Code.

1.35. "**ESOP**" means The Kirk Corporation Stock Ownership Plan and Trust.

1.36. "**Estate(s)**" means, individually, the estate of Kirk or any Affiliate Debtor and, collectively, the estates of all of the Debtors created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.37. "**Fee Claim**" means a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional or other Entity for services rendered or expenses incurred in these Chapter 11 Cases.

1.38. "**File**", "**Filed**" or "**Filing**" means file, filed or filing with the Bankruptcy Court.

1.39. "**Final Order**" means an order entered by the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors, or, in the event that an appeal, writ of certiorari, reargument or rehearing has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

1.40. "**Freeman Road**" means one of the Debtors, i.e., Freeman Road Development, LLC.

1.41. "**General Unsecured Claims**" means all Unsecured Claims, other than Lender Deficiency Claims, Administrative Claims, Priority Tax Claims, and Priority Claims.

1.42. "**GUC Proceeds**" means $500,000, plus certain percentages of net profits for a limited number of years as follows: for years two (2) through five (5) following the Effective Date, five percent (5%) of all net profits up to $499,999, ten percent of all net profits between $500,000 and $999,999, and fifteen percent (15%) of all net profits over $1,000,000. Notwithstanding the forgoing, the contribution of percentages of net profit set forth in the

preceding sentence shall remain in effect after year five (5) until such time as the aggregate contribution to the GUC Proceeds from net profits equals $300,000. In addition, the GUC Proceeds shall include fifty percent (50%) of any net proceeds obtained from the Adversary Proceeding Against the Lenders, net of all post-confirmation fees and expenses associated therewith.

1.43.    "**Holder**" means an Entity holding a Claim or Interest.

1.44.    "**Home**" means any single family home or townhome built or being built by any of the Debtors.

1.45.    "**Homebuyer**" means any Person or Persons who closed the purchased of a Home at any time from January 1, 2008 through the Effective Date.

1.46.    "**Impaired**" shall have the meaning set forth in section 1124 of the Bankruptcy Code.

1.47.    "**Indemnification Claims**" means all Unsecured Claims against the Debtors arising from contractual rights of indemnification or reimbursement in favor of any title insurance company or surety, but not including reimbursement obligations to the Lenders.

1.48.    "**Intercompany Claims**" means (a) any account reflecting intercompany book entries by one Debtor with respect to any other Debtor or (b) any Claim that is not reflected in such book entries and is held by a Debtor against any other Debtor.

1.49.    "**Interest**" means a Kirk Interest or Affiliate Debtor Interest, as the case may be.

1.50.    "**Inventory Transition Procedures**" means that the Debtors shall retain existing Homes and finish any construction for any existing Homes and sell any unsold existing Homes following the Effective Date, in each case with respect to the Homes listed on **Exhibit A** hereto that are not sold by the Effective Date, and that the Debtors shall deposit the net proceeds of each such Home closing in the Net Proceeds Escrow.

1.51.    "**Kirk**" means The Kirk Corporation, an Illinois corporation.

1.52.    "**Kirk Interest**" means any share of Kirk common stock outstanding on the Effective Date, together with the rights of any Person or Entity to purchase or demand the issuance of such common unit, including, without limitation (a) conversion, exchange, voting, participation, and dividend rights, whether or not such rights have been exercised, and including the proceeds of such rights; (b) liquidation preferences; and (c) stock options, warrants, and put rights.

1.53.    "**Kirk Office Property**" mans the Kirk office premises, parking lot, land, all improvements and all other real and personal property owned by Kirk located at 21 Juniper Circle, Streamwood, Illinois 60107.

1.54.    "**Lenders**" means any past or present lender party to the Credit Agreement.

1.55.  "**Lenders' Post-Effective Date Collateral**" means all Collateral securing the New 1111(b)(2) Secured Note.

1.56.  "**Lender 1111(b) Claims**" means the Secured Claims of the Agent and any Lenders under the New 1111(b)(2) Note.

1.57.  "**Lien**" means a lien as defined in section 101(37) of the Bankruptcy Code, or a judicial lien as defined in section 101(36) of the Bankruptcy Code and includes, without limitation, mortgages, deeds of trust, security interests, conditional sale or other retention agreements, mechanic's liens, pledges, judgments, demands, easements, defects, options, liabilities, obligations, interests, levies, assessments, defenses, setoffs, recoupments, title retention contracts, leases, subleases, agreements, commitments, options to purchase, rights of first refusal and restrictions of all kinds.

1.58.  "**Lien Resolution Procedures**" means any proceedings conducted pursuant to the Order Granting Motion for Entry of an Order Establishing Procedures for the Closing of Residential Home Sales in the Ordinary Course and the Resolution and Payment of Lien Claims entered by the Court on June 30, 2009 [Docket No. 170].

1.59.  "**Make-Up Distribution**" means a supplemental distribution payable to a Holder of an Allowed Class 8 Claims against Freeman Road or Westland in an amount (if any) necessary to assure that such Holder receives from the net proceeds of the Adversary Proceeding Against the Lenders its Pro Rata Share of such net proceeds measured by multiplying such Holder's percentage of all Allowed Class 8 Claims (including the Claims of Kirk) against Freeman Road or Westland, as the case may be, times the amount of such net proceeds.  For purposes of calculating the net proceeds, the net proceeds shall be the amount actually received by the Debtors on account of any settlement of or judgment in the Adversary Proceeding Against the Lenders, net of all attorneys' fees and other litigation expenses incurred by the Reorganized Debtors following the Effective Date.

1.60.  "**Mechanic's Lien Claims**" means any Claims that trade vendors assert to possess mechanic's liens under Illinois law with respect to any Home for which a sale closes postpetition or post-confirmation, or with respect to any of the proceeds of such sale.

1.61.  "**Miscellaneous Causes of Action**" means all Causes of Action, Avoidance Actions and all Causes of Action in the Adversary Proceeding Against the Lenders.

1.62.   "**Mortgage on Kirk Office Property**" means that certain Mortgage and Security Agreement which Kirk granted to the Lenders on March 9, 2009.

1.63.  "**Net Proceeds Escrow**" means the Cash held in the escrow account at First American Title Company (Account No. KIRKSJO) pursuant to the Cash Collateral Order and this Plan, subject to reductions and withdrawals in favor of trade creditors pursuant to the Lien Resolution Proceedings and otherwise subject to the provisions of this Plan, including, without limitation, those provisions pertaining to the Inventory Transition Procedures.

1.64.   "**New Equity**" means 49% of the stock of the Reorganized Kirk to be purchased by the New Equity Purchaser on the Effective Date, plus the 51% of the stock of Reorganized Kirk to be vested in the ESOP, in each case pursuant to the New Stock Ownership Agreement.

1.65.   "**New Equity Purchaser**" means an Entity in which the Debtors' current CEO and President, John Carroll, will be a principal and an investor, which shall purchase 49% of the stock of Reorganized Kirk on the Effective Date pursuant to the New Stock Ownership Agreement.

1.66.   "**New 1111(b)(2) Secured Note**" means the promissory note to be executed and delivered by the Debtors to the Lenders on the Effective Date in the original principal amount of $53,531,091, minus any amounts for any postpetition releases or reductions on any letters of credit posted by the Lenders for the Debtors, having a maturity date of December 31, 2024, in the form set forth in **Exhibit B** hereto.

1.67.   "**New Credit Agreement**" means the Credit Agreement to be entered on the Effective by the Lenders and the Reorganized Debtors in connection with the New 1111(b)(2) Secured Note, in the form set forth in **Exhibit C** hereto.

1.68.   "**New Stock Ownership Agreement**" means a stock ownership agreement that will govern the rights of the shareholders of the Reorganized Kirk.

1.69.   "**Person**" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.70.   "**Petition Date**" means May 12, 2009, the date that Kirk and nine Affiliate Debtors Filed their petitions under chapter 11 of the Bankruptcy Code, except that for two additional Affiliate Debtors, *i.e.*, Freeman Road Development, LLC and Westland, LLC, the "**Petition Date**" shall mean June 8, 2009, the date on which they Filed their Chapter 11 petitions.

1.71.   "**Plan**" means this Joint Plan of Liquidation, all attachments, exhibits and schedules hereto, and any amendments or modifications hereof.

1.72.   "**Prime Rate**" means, except where otherwise defined, the "last" prime rate recited in the "Bonds, Rates & Yields" table in the edition of the *Wall Street Journal* published two business days before the Effective Date.

1.73.   "**Priority Claim**" means any Claim against the Debtors, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the Bankruptcy Code. With respect to the Claims of employees or former employees, such Claims shall constitute Priority Claims only to the extent permissible under sections 507(a)(4) and (a)(5) of the Bankruptcy Code or prior order of the Bankruptcy Court.

1.74.   "**Priority Real Estate Tax Claim**" means any Claim for real estate taxes against the Debtors, including, without limitation any interest and penalties thereon, to the extent entitled

to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code, for taxes on the properties identified as Apple Creek Residential, Rockwell Place, Bloomfield Estates, and for the Kirk Office Property.

1.75. "**Priority Severance Claim**" means any Claim for severance pay to the extent entitled to priority under section 507(a)(4), 507(a)(5) or 503 of the Bankruptcy Code.

1.76. "**Priority Tax Claim**" means any Claim for taxes against the Debtors, including, without limitation, any interest and penalties due thereon, to the extent entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than Priority Real Estate Taxes.

1.77. "**Professionals**" means those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court in a Final Order issued pursuant to section 503(b)(4) of the Bankruptcy Code, or (iii) for which compensation and reimbursement is provided pursuant to this Plan.

1.78. "**Property**" means all property and interests in property of the Debtors' Estates of any nature whatsoever, real or personal, tangible or intangible, existing on the Effective Date.

1.79. "**Pro Rata Share**" means, as of any certain date, with respect to any Allowed Claim in any Class, or set of Classes (in whole or in part) the proportion that such Allowed Claim bears to the aggregate amount of all Allowed Claims in such Class or set of Classes (in whole or in part).

1.80. "**Reorganized Debtors**" shall mean the post-confirmation Debtors after the transactions and events to occur (or deemed to occur) on the Effective Date are effected pursuant to this Plan, including the vesting of the Property of the Estates and other rights and powers in the Reorganized Debtors pursuant to Section 6.3 of the Plan.

1.81. "**Reorganized Kirk**" means Kirk as a Reorganized Debtor.

1.82. "**Replacement Mortgage**" means a replacement lien in the real estate of the Utility Company granted by the Debtors to the Lenders pursuant to the Cash Collateral Order approved by the Court on June 23, 2009, in the form set forth on **Exhibit D** hereto.

1.83. "**Schedules**" means the Debtors' Schedules of Assets and Liabilities filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended from time to time.

1.84. "**Secured Claim**" means all or that portion of a debt existing on the Effective Date, as finally allowed and approved by the Bankruptcy Court, (i) to the extent that such debt is not greater than the value of the assets of the Debtors that the Bankruptcy Court finds are valid, perfected and unavoidable security for such debt, in accordance with section 506(a) of the Bankruptcy Code and this Plan, or (ii) because of the Lenders' having so elected under Section

1111(b)(2) of the Bankruptcy Code all of the Lenders' Claims are treated as secured in conformity with the election..

1.85.    "**Secured ESOP Note Claim**" means any Claim of a former ESOP participant under a promissory note for any portion of the purchase price for the former participant's interest in Kirk's stock to the extent that such Claim is secured by a letter of credit.

1.86.    "**Subcontractors**" means those individuals and entities retained by Contractors to perform work, provide services related to, or provide materials for, any Home.

1.87.    "**Suppliers**" means those individuals and entities who supplied goods and equipment necessary to perform work on any Home.

1.88.    "**Unimpaired**" means any Claim that is not Impaired.

1.89.    "**Unsecured Claim**" means any Claim that is not secured by a valid, perfected and unavoidable Lien or a Letter of Credit posted by the Debtors (or any of them) as account parties, including the amount of any deficiency Unsecured Claim of the Lenders or any other unsecured Holder of an Allowed Claim as set forth in this Plan or as determined pursuant to a Final Order of the Bankruptcy Court other than Administrative Claims, Priority Real Estate Tax Claims, Priority Severance Claims and Priority Tax Claims.

1.90.    "**Unsecured ESOP Note Claim**" means any Claim of a former ESOP participant under a promissory note for any portion of the purchase price for the former participant's interest in Kirk's stock to the extent that such Claim is not secured by a letter of credit.

1.91.    "**Utility Company**" means non-debtor affiliate Rockwell Utilities, LLC.

1.92.    "**Westland**" means one of the Debtors, i.e., Westland LLC.

1.93.    Unless otherwise specified, all section, article, schedule, attachment or exhibit references in this Plan are to the respective Section in, Article of, Schedule, Attachment, or Exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

1.94.    For purposes of this Plan, unless otherwise provided herein: (a) any reference to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (b) any reference to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (c) any reference to an Entity or Person as a Holder of a Claim or Interest includes that Entity's or Person's successors and assigns; (d) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (e) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release or other

agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (f) the rules of construction of section 102 of the Bankruptcy Code will apply; and (g) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

1.95.  All terms not expressly defined herein shall have the respective meanings given such terms in (i) the Credit Agreement, or (ii) section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code, as the case may be.

**ARTICLE 2**
**PROVISIONS FOR PAYMENTS OF ALLOWED**
**ADMINISTRATIVE AND PRIORITY TAX CLAIMS**

2.1.  **In General**.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Claims, and Priority Tax Claims are not classified in this Plan. The treatment of and consideration to be received by Holders of Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims pursuant to this Article 2 shall be in full and complete satisfaction, settlement, release and discharge of such Claims.

2.2.  **Treatment of Administrative Claims**.  Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, without interest, in Cash, on the tenth (10th) Business Day following the later of (i) the Effective Date, or (ii) the date on which such Claim becomes due.

2.3.  **Treatment of Priority Tax Claims**.  On the tenth (10th) Business Day following the later of (i) the Effective Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim at the election of the Debtors made on or prior to the Effective Date (a) Cash equal to the amount of such Allowed Priority Tax Claim; and (b) such other treatment as to which the Debtors and the Holder of such Allowed Priority Tax Claim shall agree upon in writing.

2.4.  **Treatment of Priority Claims**. On the tenth (10th) Business Day following the later of (i) the Effective Date if such Priority Claim is an Allowed Priority Claim as of the Effective date or (ii) the date on which such Priority Claim becomes an Allowed Priority Claim, each Holder of an Allowed Priority Claim shall receive in full satisfaction, settlement and release of and in exchange for such Allowed Priority Claim at the election of the Debtors made on or prior to the Effective Date (a) Cash equal to the amount of such Allowed Priority Claim; and (b) such other treatment as to which the Debtors and the Holder of such Allowed Priority Claim agree upon in writing.

2.5.  **Bar Date for Administrative Claims**. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred

through the Effective Date, must be filed and served on the counsel for the Debtors, counsel for the Agents and counsel for the Committee no later than thirty (30) days after the Effective Date ("**Administrative Claims Bar Date**").  Any Person that is required to File and serve a request for payment of an Administrative Claim and fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in Distributions under this Plan on account thereof. Objections to an Administrative Claim must be Filed and served on the Debtors' counsel, the Agent's counsel, the Committee's counsel and the requesting party and its counsel (if any) by sixty (60) days after the Effective Date.

## ARTICLE 3
## CLASSIFICIATION OF CLAIMS AND INTERESTS

3.1.    For purposes of this Plan, all other Claims and Interests are classified as follows:

3.2.    Class 1 Claims shall consist of all Lenders' Secured Claims, after giving effect to the Lenders' election under § 1111(b)(2) of the Bankruptcy Code, made at the hearing on the Disclosure Statement on September 2, 2009.

3.3.    Class 2 Claims shall consist of all Priority Real Estate Tax Claims.

3.4.    Class 3 Claims shall consist of all Priority Severance Claims.

3.5.    Class 4 Claims shall consist of all Post-Closing Claims of Homebuyers.

3.6.    Class 5 Claims shall consist of all Mechanic's Lien Claims.

3.7.    Class 6 Claims shall consist of all Unsecured ESOP Note Claims if such claimant's entire Claim on account of its ESOP note is not secured to any extent by a letter of credit, *i.e.*, the Holder of the Unsecured ESOP Note Claim does not hold any Secured ESOP Note Claim.  Any Unsecured ESOP Note Claim held by a former ESOP participant whose Claim under an ESOP Note is partially Secured by a letter of credit shall be classified as a Class 8 Claim.  Whether and to what extent an Unsecured ESOP Note belongs in Class 6 or Class 7, or perhaps partially in both such Classes, shall be determined by the Court in the Adversary Proceeding commenced by the letter of credit Trustee.

3.8.    Class 7 Claims shall consist of all Secured ESOP Note Claims.

3.9.    Class 8 Claims shall consist of all General Unsecured Claims not otherwise classified.

3.10.    Class 9 Claims shall consist of all Lenders' Deficiency Claims.

3.11.    Class 10 Claims shall consist of all Intercompany Claims.

3.12.    Class 11 Claims shall consist of all Indemnification Claims.

3.13.    Class 13 Interests shall consist of Affiliate Debtor Interests.

3.14.    Class 14 Interests shall consist of all Kirk Interests.

## ARTICLE 4
## TREATMENT OF CLAIMS AND INTERESTS

4.1.    **In General**. Except as limited by section 1141(d) of the Bankruptcy Code, the treatment of and consideration to be received by Holders of Allowed Claims and Interests pursuant to this Article 4 shall be in full and complete satisfaction, settlement, release and discharge of such Claims and Interests. The Debtors' obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of this Plan.

4.2.    **Bar Date**. Unless otherwise set forth in the Plan or ordered by the Bankruptcy Court, the Bar Date for filing proofs of Claim, or of Interest, as the case may be, against the Debtors shall be **October 15, 2009**. Any Person or Entity that is required to File a proof of Claim or of Interest and fails to timely File such proof of Claim or of Interest, as the case may be, shall be forever barred, estopped and enjoined from asserting such Claim or Interest or participating in Distributions under the Plan on account thereof.

4.3.    **Treatment of Class 1 Claims – Lender 1111(b)(2) Claims**. Class 1 Claims are Impaired. On the Effective Date, the Holders of Allowed Class 1 Claims shall receive:

(a)    The New 1111(b)(2) Secured Note.   The New 1111(b)(2) Secured Note shall be executed by the Reorganized Debtors (other than Freeman Road and Westland) and the Utility Company (collectively, the "Obligors") and delivered to the Lenders on the Effective Date of the Plan. The full terms of the New 1111(b)(2) Secured Note set forth therein. The New 1111(b)(2) Secured Note shall have the following principal terms:

(i)    **The Original Principal Amount**:   $53,531,091 (*i.e.*, the $52,031,091 balance outstanding under the Credit Agreement with the Lenders as of May 12, 2009, plus the $1,500,000 replacement lien granted by the Court), minus any reductions or releases under Letters of Credit not drawn on the Petition Date that have been or are reduced or released during the Chapter 11 cases or the term of the Note.

(ii)    **Interest Rate**:  This is an interest-free, principal-only obligation, except that the $1,500,000 replacement lien obligation shall bear interest at the Prime Rate per annum payable on December 31 each calendar year.

(iii)    **Collateral**:    The Obligors shall retain and use all Collateral of the Lenders, which shall include:

(1)    all Cash, including, but not limited to, all Cash in the Net Proceeds Escrow and the Cash Collateral Account (as defined below) at any time;

(2)    all real property and improvements including without limitation, all vacant land, Homes, new homes, residential subdivisions, lots, models, fixtures, improvements belonging to the Debtors on the

Petition Date (other than for (i) real property sales closed postpetition and (ii) real property owned by Freeman Road or Westland except such property is Collateral to the extent that it is subject to a mortgage in favor of the Lenders that remains in effect because the mortgage is determined by a Final Order not to be subject to avoidance or recovery by the Reorganized Debtors);

(3)     all personal property and other assets of any kind that are subject to the Lenders' liens, mortgages, or security interests;

(4)     all real and personal property acquired by the Debtors post-petition through the Effective Date, or acquired by the Reorganized Debtors after the Effective Date, except for additional property purchased with financing from a third party lender pursuant to Section 11 (ii) below; and

(5)     the Utility Company's real property subject to the Replacement Mortgage and the personal property owned by the Utility Company.

(iv)     **Term**:  From the Effective Date through the earlier of:

(1)     December 31, 2024, or

(2)     any earlier date by which the entire amount of the Note has been paid by the Debtors.

(v)     **Required Payments Under the Note**:  The following payments (the "Required Payments") shall be required during the term of the Note:

(1)     *Minimum Annual Payment*.  For each calendar year, commencing with the calendar year ending December 31, 2010, the Obligors shall make a "Required Minimum Annual Payment" equal to the greater of (i) $1,000,000 or (ii) all Minimum Lot Release Payments (as defined below) and Market Escalator Lot Release Payments (as defined below) paid during any calendar year;

(a)     **Definition of Minimum Lot Release Payments**. "Minimum Lot Release Payments" shall mean the lot release prices payable for future homes derived for current land holdings from the lot release table previously delivered to the Lenders, a copy of which is attached as **Exhibit F** hereto; or with respect to lots on any real estate that may be subsequently purchased, assigned initial minimum lot payments based on cost and allocated pursuant to the appraisals.

(b)     **Definition of Market Escalator Lot Release Payments**.  "Market Escalator Lot Release Payments" shall mean the amount by which existing lot release prices are adjusted each calendar year, by increasing each existing price each year by the percentage increase for the prior year stated in the most recent Median Sales Price for Existing Single Family Homes for Metropolitan Areas as published by the National Association of Realtors, as it pertains to such median sales prices for the Metropolitan Area of Chicago-Naperville- Joliet, IL.

(2)     *Cash Sweep*.  As set forth in the Forecast attached to the New Credit Agreement as Exhibit C, any "Ending Cash Balance" as of the end of any calendar year in excess of $10,000,000 shall be paid to reduce the "Ending Loan Balance."

(3)     *Balance of Note*.   Any then outstanding balance of the Note shall be paid not later than December 31, 2024.

(vi)     **Existing Homes**:  Any existing Homes (other than models) shall be finished, as needed, and sold by the Reorganized Debtors after the Effective Date, with 100% of the net proceeds to be deposited into the Net Proceeds Escrow.

(vii)     **Bulk Sales**:  "Bulk Sale" shall mean the sale of the Westland property, the Apple Creek Commercial property, the Utility Company property or any bulk sale of ten or more residential lots.  The net proceeds of any Bulk Sale shall be deposited by the Reorganized Debtors in a cash collateral account in which the Lenders shall be granted a first-priority perfected lien as security for obligations under the Note.   The Debtors shall use the assets in the Cash Collateral Account (as defined below) to make Prepayments (as defined below) or other Permitted Uses (as defined below).

(viii)     **Cash Collateral Account and Prepayments on Note**.  In addition to the Net Proceeds Escrow, the Obligors may maintain a cash collateral account (the "Cash Collateral Account") in a third-party national banking association. The assets in the Cash Collateral Account shall be invested by the Debtors in an investment grade commercial paper or other "fixed income" investments subject to a first-priority perfected lien in favor of the Lenders to secure the Note, which shall include all investment proceeds contained in the account.  The Obligors shall be able to use the funds from the Cash Collateral Account for Prepayments and for other Permitted Uses.  Funds may be deposited by the Debtors into the Cash Collateral Account from the proceeds of Bulk Sales or other funds derived from the operations of the Reorganized Debtors' business.  From time to time, the Reorganized Debtors may, in addition to the Required Minimum Annual Payments, make a prepayment on the Note (each, a "Prepayment"), provided that the Lenders agree that the Prepayment shall be credited to reduce the balance of the Note in an amount equal to (i) the amount of the payment, plus (ii) an amount

computed by applying an imputed per annum interest rate of 6% times the principal amount of the Prepayment, with the imputed interest to be compounded annually and calculated from the date it is made through December 31, 2024.

(ix)    **Financial Covenants**.  In addition to the other obligations of the Reorganized Debtors under the Note, the Reorganized Debtors shall be obligated as follows:

(1)    *Net Improvement*:  For each three - year period during the term of the Note, commencing with a period from January 1, 2011 through December 31, 2013 (each, a "Note Window"), the Reorganized Debtors shall achieve a Minimum Net Improvement during that Note Window period compared to the preceding Note Window, except that the Minimum Net Improvement for the first Note Window shall be compared to the Collateral Surplus/Shortfall for the year ending December 31, 2010.  As used herein, the term "Minimum Net Improvement" means an average annual improvement of 3% per calendar year in the Collateral Surplus/Shortfall achieved during any Note Window, as compared to calendar year 2010 for the first Note Window and thereafter as compared to the annual average increase for the immediately preceding Note Window.

(2)    *Permitted Uses of Cash Collateral*.  The Reorganized Debtors may in the ordinary course of business use Cash Collateral (including, without limitation, funds from the Net Proceeds Escrow and Cash Collateral Account and any other cash subject to the Lenders' perfected liens and security interest) for any of the following purposes ("Permitted Uses"):

(a)    for any expense reasonably incurred to conduct the residential homebuilding business of the Reorganized Debtors;

(b)    for payment of any administrative priority expense claims incurred during the Chapter 11 case and post-confirmation professional fees;

(c)    for working capital;

(d)    for construction and development funding;

(e)    for the purchase and development of additional land;

(f)    to make Prepayments under the Note; and

(g)    to retain as Cash Collateral securing the Note.

(x)    The Reorganized Debtors shall remain active in the residential homebuilding business throughout the term of the Note, and shall use substantially all of their assets, including the Collateral, for that purpose, for payments under the Note or for maintaining or obtaining additional Collateral to secure the Note.

(xi)    **Defaults**.  Defaults shall consist of (i) any failure to make any Required Payments or (ii) comply with any Financial Covenant, where such default remains uncured for ninety (90) days after the Lenders have provided the Obligors with written notice of such default.

(xii)    **Additional Financing**.  The Reorganized Debtors may obtain additional financing as follows:

(1)    Up to $1,000,000 from the New Equity Owner, provided that such financing is expressly subordinate in priority to the liens of the Lenders on the Collateral and subordinate in right of payment until the Note is paid in full; and

(2)    Financing from third parties to purchase additional real estate not currently owned by the Reorganized Debtors, which additional real estate shall not be included in the Lenders' Collateral.

(xiii)    **No Prepayment Penalty**.  The Note may be prepaid at any time, in full or in part, without penalty or premium.

(b)    the New Credit Agreement.

(c)    the Replacement Note.

Notwithstanding anything contained in this Section 4.3 or the Plan to the contrary, the Liens of the Lenders shall be governed by the terms of the existing prepetition loan documents, the orders entered by the Court in these Chapter 11 Cases, and the Plan (including the Exhibits attached hereto), as such documents and instruments are amended by the Plan itself or by such separate amendment as may be filed or recorded by the Reorganized Debtors following the Confirmation Date.  The Debtors expressly reserve and retain all Claims against the Lenders, including, without limitation, those asserted in the Adversary Proceeding Against the Lenders.  The orders entered by this Court and the terms of the Plan (including the Exhibits attached hereto) shall govern with respect to any issue with respect to which these provisions are inconsistent with the existing prepetition loan documents.

4.4.    **Treatment of Class 2 Claims – Real Estate Priority Tax Claims**.  Class 2 Claims are Unimpaired.  Each Holder of an Allowed Class 2 Claim shall receive, pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code, Cash payments on account of such claim in sixty (60) consecutive monthly installments amortized over five (5) years and bearing fixed interest per annum at the Prime Rate plus 2%; provided, however, that Real Estate Priority Tax Claims for property sold pre-confirmation or deeded to the Lenders under Deeds in Lieu or otherwise

pursuant to the Plan shall be paid by the new owners of such property. Following the Effective Date, all county or municipal authorities shall provide for real estate taxes for Homes to be divisible and payable by lot and by legal description for said lot at a Home closing and thereafter. Tax payments from Home closings made by the Homebuyer shall be applied to reduce the principal balance of Class 2 Claims remaining outstanding to any tax authority.

4.5.    **Treatment of Class 3 Claims – Priority Severance Claims**. Class 3 Claims are Unimpaired. Each Holder of Allowed Class 3 Claims shall receive cash payments not later than December 31, 2009, in an amount equal to such Holder's Allowed Class 3 Claim.

4.6.    **Treatment of Class 4 Claims – Post-Closing Claims of Homebuyers**. Class 4 Claims are Unimpaired. Holders of Allowed Class 4 Claims shall receive payment in cash or in kind of their claims in the ordinary course of the Reorganized Debtors' business, and such claims shall not be discharged under the Plan or be subject to any stay, injunction, exculpation or discharge hereunder, but shall remain otherwise subject to all defenses, setoff or counterclaims. All rights of Holders of Class 4 Claims against Residential Warranty Corporation shall remain in full force and effective before and after the Effective Date.

4.7.    **Treatment of Class 5 Claims – Mechanic's Lien Claims**. Class 5 Claims are Impaired. Each Holder of an Allowed Class 5 Claim shall receive payment of such Claims in full from the closing proceeds of any Home on which such Holder possesses a first-priority Mechanic's Lien that is an Allowed Secured Claim as determined pursuant to the Lien Resolution Procedures. To the extent that any Holder asserting a Class 5 Claim is determined to have an Allowed Class 8 Claim (General Unsecured Claim) rather than a first-priority Allowed Mechanic's Lien Claim, that portion of that Holder's Claim shall receive its Pro Rata Share of GUC Proceeds.

4.8.    **Treatment of Class 6 Claims – Unsecured ESOP Note Claims**. Class 6 Claims are Impaired. Each Holder of an Allowed Class 6 Claim may elect on that Holder's ballot to receive one of the following:

(i)      such Holder's Pro Rata Share of GUC Proceeds; or

(ii)     such Holder's Pro Rata Share of the Contributed Allocation of the New Equity.

4.9.    **Treatment of Class 7 Claims – Secured ESOP Note Claims**. Class 7 Claim Interests are Unimpaired. Holders of Class 7 Claims shall be paid, to the extent so entitled, from the proceeds of Standby Letter of Credit No. CLS420344 dated August 19, 2004, as amended, pursuant to the terms of that Letter of Credit, to the extent that such Holder is determined by the Bankruptcy Court.

4.10.   **Treatment of Class 8 Claims – General Unsecured Claims**. Class 8 Claims are Impaired. Holders of Allowed Class 8 Claims (including Holders of Allowed Class 5 Claims to the extent provided in <u>Section 4.7</u> and further including Holders of Allowed Class 6 Claims who elect the treatment provided in <u>Section 4.8(i)</u>) shall receive their respective Pro Rata Shares of

GUC Proceeds.  In addition, Holders of Allowed Class 8 Claims against Freeman Road or Westland shall also receive their respective Pro Rata Shares of the Make-Up Distribution.

4.11. **Treatment of Class 10 Claims – InterCompany Claims**.  Class 10 Claims are Impaired.  Holders of Class 10 Claims shall receive no Distributions under the Plan on account of such Claims, except that Kirk may receive its Pro Rata Share of any Distributions from Westland and Freeman Road on account of net proceeds from a settlement or judgment obtained with respect to the Adversary Proceeding Against the Lenders, if applicable.

4.12. **Treatment of Class 11 Claims – Indemnification Claims**.  Class 11 Claims are Impaired.  Each Holder of an Allowed Class 11 Claim shall receive either (i) that Holder's respective Pro Rata Share of GUC Proceeds or, alternatively, (ii) enter a contract with the Reorganized Debtors under which any right to receive any GUC Proceeds will be waived and released.

4.13. **Treatment of Class 12 Interests – Affiliate Debtor Interests**.  Class 12 Interests are Impaired. Holders of Class 12 Interests shall receive no Distributions under the Plan on account of such Interests, and on the Effective Date, the Class 12 Interests, and all documents and instruments evidencing or governing the same, shall be deemed transferred and assigned to the Reorganized Kirk; provided, however, that all membership Interests held by any non-Debtor Person or Entity shall be retained by such Person or Entity.

4.14. **Treatment of Class 13 Interests – Kirk Interests**.  Class 13 Interests are Impaired. Holders of Class 13 Interests shall receive no Distributions under the Plan, and on the Effective Date the Class 13 Interests, and all documents and instruments evidencing or governing the same, shall be deemed to own 51% of the New Equity, pursuant to the provisions of the New Stock Ownership Agreement.

## ARTICLE 5
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1. **Impaired Classes of Claims Entitled to Vote**. Holders of Claims in Classes 1, 5, 6, 8, 10, 11, 12 and 13 are Impaired and are entitled to vote to accept or reject the Plan.

5.2. **Acceptance by an Impaired Class**. In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if it is accepted by the Holders of at least two-thirds (2/3) in dollar amount and one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

5.3. **Presumed Acceptances by Unimpaired Classes**. Holders of Claims in Classes 2, 3, 4 and 7 are Unimpaired by this Plan. Under section 1126(f) of the Bankruptcy Code, Holders of such Claims are conclusively presumed to accept this Plan and their votes will not be solicited.

5.4. **Classes Deemed to Reject Plan**. Under section 1126(g) of the Bankruptcy Code, Classes 12 and 13 are deemed to reject this Plan.

## ARTICLE 6
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.1.   **Deemed Consolidation Solely for Purposes of Treating Certain Unsecured Claims**.

(a)   **Deemed Consolidation**. This Plan contemplates and is predicated upon the deemed consolidation of the Debtors as of the Effective Date solely for the purpose of allocating GUC Proceeds among Allowed Holders of Class 5, Class 6 and Class 8 Claims to the extent any such Holders are entitled to their respective Pro Rata Shares of the GUC Proceeds under this Plan for distribution purposes. This Plan does not contemplate the substantive consolidation of the Debtors with respect to the other Classes of Claims or Interests set forth in this Plan, or for any other purpose.   Except as set forth in this Section 6.1, such deemed consolidation shall not, other than for purposes related to this Plan, (1) affect the legal and corporate structure of the Debtors, (2) cause any Debtor to be liable for any Impaired Claim or Unimpaired Claim under this Plan for which it otherwise is not liable, and the liability for any such Claim shall not be affected by such deemed consolidation, (3) affect any obligations under any leases or contracts assumed prior to the Effective Date, (4) affect any obligations to pay quarterly fees to the United States Trustee, or (5) notwithstanding clause (i) above, affect or impair any valid and perfected security interests or liens in Property of the Debtors.   In addition, the deemed consolidation provided herein shall be subject to and shall not apply to the Make-Up Distribution provided under Section 6.6 below, which shall be made to Holders of Allowed Class 8 Claims against Freeman Road or Westland.

(b)   **Deemed Consolidation Order**. Unless the Bankruptcy Court has approved the deemed consolidation of these Chapter 11 Cases by a prior order, this Plan shall serve as, and shall be deemed to be, a motion for entry of an order consolidating access to the extent provided in the Plan by Class 5, Class 6, Class 8 and Class 11 Creditors to their Pro Rata Shares of GUC Proceeds to the extent provided in Section 6.1 of this Plan. If no objection to such consolidation is timely filed and served by any Holder of an Impaired Claim affected by this Plan as provided herein on or before the deadline for objection to confirmation of this Plan, an order ordering the deemed consolidation of these Chapter 11 Cases as provided in Section 6.1 of this Plan, which may be the Confirmation Order, may be entered by the Bankruptcy Court. If any such objections are timely filed and served, a hearing with respect to such deemed consolidation of the Chapter 11 Cases and the objections thereto shall be included in the Confirmation Hearing.

6.2.   **Prior to the Effective Date**. Except as may be otherwise ordered by the Bankruptcy Court, the directors, officers and members of the Debtors as of the Confirmation Date shall continue to serve in such capacities until the Effective Date. All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Chapter 11 Cases pursuant to section 105 or 362 of the Code or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

6.3.   **Vesting of Debtors' Estates**. On and as of the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code all remaining Property of the Estates, including, without limitation, all Avoidance Actions (excluding Avoidance Actions released under any of Sections

{05919: 210: 00476114.DOC : }                    19

10.3, 10.4, 10.5 or 10.6 of this Plan), Causes of Action (excluding Causes of Action released under any of Sections 10.3, 10.4, 10.5 or 10.6 of this Plan), and the Adversary Proceeding Against the Lenders, all rights to surcharge the Lenders pursuant to § 506(c) of the Bankruptcy Code, and all other Causes of Action and other rights against the Lenders (collectively, "Claims Against the Lenders") all rights of the Debtors under this Plan, the Confirmation Order, and all other orders entered by the Bankruptcy Court in the Chapter 11 Cases on or prior to the Effective Date, and all books and records related to the Estates, shall be transferred to and vest in the Reorganized Debtors and be deemed contributed thereto, subject to the terms of this Plan. Nothing in this Section 6.3, however, shall preclude payment of statutory fees under section 1930 of Title 28 of the United States Code to the extent unpaid on the Effective Date. The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of their Property to the Reorganized Debtors.

6.4.   **New Equity; Operating Capital Infusion**.  On the Effective Date, the New Equity Purchaser shall purchase 49% of the stock of Reorganized Kirk for not less than $500,000 pursuant to the New Stock Ownership Agreement.  Current Participants in the Kirk Corporation ESOP Plan & Trust will retain ownership (either through the ESOP Trust or individually) of 51% of the outstanding shares of the Reorganized Kirk subject to the terms of the New Stock Ownership Agreement between the ESOP and the new equity providers.  The ESOP and the Participants will be prohibited from receiving any cash distributions, dividends or stock repurchases for five years from the date of confirmation.  Minimum annual distributions of stock, if any, required to maintain compliance with ERISA requirements will be allowed.  Establishing ownership of the stock of the Reorganized Kirk in this manner is anticipated to potentially result in beneficial tax consequences for the Reorganized Debtors when they return to profitability in the future by potentially permitting them to reduce future taxable income by using the Debtor's net operating losses for that purpose.  These potential tax benefits may prove attractive to some investors.

All of Kirk's membership Interests in the Affiliate Debtors and any non-debtor affiliates shall remain in full force and effect, and shall be deemed transferred and assigned to Reorganized Kirk, simultaneously with the New Equity Purchaser's purchase of New Equity; provided, however, all membership Interests held by any non-debtor Person or Entity shall be retained by such Person or Entity.  On the next Business Day following the Effective Date, the New Equity Purchaser shall cause the Contributed Allocation of the New Equity of Reorganized Kirk to be made available to those members of Holders of Class 6 Claims who have elected such treatment pursuant to Section 4.8(ii) of this Plan.  In addition, on the Effective Date, the New Equity Purchaser shall make available additional operating capital to the Reorganized Debtors which shall constitute subordinated debt (i.e., subordinated to the New Secured Note, the Cash Collateral Note, the Cash Flow Note and all obligations under the new construction loan agreement) in the amount of not less than $500,000.

6.5.   **Causes of Action/Avoidance Actions**.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, but subject to the terms and provisions of this Plan and except as otherwise released hereunder pursuant to any of Sections 10.3, 10.4, 10.5 or 10.6 of this Plan, the Debtors on behalf of themselves and the Holders of Allowed Claims, shall retain all Causes of Action and all Avoidance Actions (including, without limitation, the Adversary Proceeding Against the Lenders, and all other Claims Against the Lenders) that in either case the Debtors had or had

power to assert on the Effective Date, which Causes of Action and Avoidance Actions shall be deemed assigned to and vested in the Reorganized Debtors, and the Reorganized Debtors may commence or continue in any appropriate court or tribunal (including the Bankruptcy Court) any suit or other proceeding for the enforcement of such Causes of Action and Avoidance Actions. Nothing contained in this Plan shall constitute a waiver of the rights, if any, of the Debtors to a jury trial with respect to any Avoidance Actions or objection to any Claim or Interest. To the extent that the Reorganized Debtors may in their discretion deem it to be appropriate, the Reorganized Debtors shall maintain reasonable records relating to the Avoidance Actions and Causes of Action (including proceeds generated from settlement or judgment, and expenses). The Reorganized Debtors may in their sole discretion elect not to pursue any Avoidance Action or Cause of Action the pursuit of which they deem not to be in the best interests of the Estates.

6.6. **Make-Up Distribution**. The Make-Up Distribution, if needed, shall be made to Holders of Allowed Class 8 Claims against Freeman Road and Westland according to their Pro Rata Shares (and as otherwise provided in the Definition of Make-Up Distribution).

6.7. **Continuing Use of Lien Resolution Procedures**. The Lien Resolution Procedures shall continue to be in effect after the Effective Date with respect to all existing Homes closed from the Petition Date through and including the Effective Date or thereafter, and the Court shall determine all Mechanic's Lien Claims pursuant thereto. Mechanic's Lien Claims against future homes constructed subsequent to the Effective Date shall be paid at the closing of such Home, upon the submission of such documents as the title company closing each Home may reasonably require, from a construction escrow established from the net proceeds of such sale pursuant to the Owners' Sworn Statement submitted to the title company for each such Home.

6.8. **Representative of the Estate**. The Reorganized Debtors collectively shall be the representative of the Estates of the Debtors in all respects pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, and the Reorganized Debtors shall be vested as of the Effective Date with all rights and powers of the Debtors under the Bankruptcy Code and other applicable law, this Plan, the prior orders of the Court in these Chapter 11 Cases, and in all other respects.

6.9. **Authorization of Officers**. The Reorganized Debtors and the officers and members thereof are authorized to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan.

## ARTICLE 7
## CLAIMS AND DISTRIBUTIONS

7.1. **Distributions Under this Plan**. As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall establish deposit and reserve accounts in accordance with this Plan. All Distributions to be made or otherwise reserved pursuant to this Plan shall be held by the Reorganized Debtors in trust in such accounts for the benefit of the Holders of Claims entitled to receive such Distributions.

7.2.   **Date for Distributions**.   The date for Distributions to be made on Allowed Claims shall be the date not later than thirty (30) days after the applicable Bar Date or as soon as practicable thereafter in the Debtors' reasonable discretion.   Notwithstanding the foregoing, the Debtors reserve the right to make interim Distributions on Allowed Claims or forgo Distributions on Claims prior to such Claims being deemed an Allowed Claim.

7.3.   **Delivery of Distributions**.   Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to be made to Holders of Allowed Claims shall be made at (a) the address of each Holder as set forth in the Schedules filed with the Court unless superseded by the address set forth on proofs of Claim filed by such Holder, or (b) the last known address of such Holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address.   If any Distribution is returned as undeliverable, the Reorganized Debtors may, in their discretion, make such efforts to determine the current address of the Holder of the Claim or Interest with respect to which the Distribution was made as the Reorganized Debtors deem appropriate, but no Distribution to any Holder shall be made unless and until the Reorganized Debtors have determined the then-current address of the Holder, at which time the Distribution to such Holder shall be made to the Holder without interest.   Amounts in respect of any undeliverable Distributions made through or by the Reorganized Debtors shall be returned to, and held in trust by, the Reorganized Debtors until such Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code or as set forth herein.

7.4.   **Undeliverable Distributions as Unclaimed Property**.   Except with respect to property not distributed because such property is being held in a Disputed Claim Reserve, Distributions that are not claimed by the expiration of six (6) months from the later of the (a) Effective Date or (b) the date of final Distributions under Section 7.2, shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest in and be retained by the Reorganized Debtors, and the Claims with respect to which such Distributions are to be made shall be automatically canceled and extinguished. After the expiration of the six-month period referenced in the preceding sentence, the claim of any Person or Entity to such Distributions shall be discharged and forever barred, and such unclaimed property as well as further Distributions to that party shall be Distributed to Holders of Claims as provided in Article 4 hereof. Nothing contained in this Plan shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

7.5.   **Objections to Claims**.   Objections to Administrative Claims and all other Claims, including claims arising from the rejection of executory contracts and unexpired leases, shall be Filed with the Bankruptcy Court and served no later than sixty (60) days after the applicable Bar Date, provided, however, that this deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtors, without notice or a hearing (the "**Claims Objection Deadline**").   On and after the Effective Date (i) the Reorganized Debtors and any other party in interest may object to any Administrative Claims, and (ii) only the Reorganized Debtors may object to Claims other than Administrative Claims (including those Claims listed in the Debtors' Schedules but excluding any Claims deemed Allowed under this Plan).   All such objections must be filed prior to the Claims Objection Deadline, and scheduled claims that are subject to any such objection shall not be deemed Allowed Claims pending resolution of the objection with respect thereto.   Notwithstanding the foregoing, (x) the Bankruptcy Court shall overrule any

objections to Claims that are deemed Allowed Claims under this Plan and (y) any proof of Claim Filed after the Bar Date shall be automatically disallowed as a late Filed Claim, without any action by Debtors, unless and until the party Filing such Claim obtains the written consent of the Debtors, or after the Effective Date, the Reorganized Debtors, to File such Claim late or obtains an order of the Bankruptcy Court upon notice to the Debtors that permits the late Filing of the Claim, in which event, the Debtors, or after the Effective Date, the Reorganized Debtors, shall have 30 days from the date of such written consent or order to object to such Claim, which deadline may be extended with the written consent of the Holder of such Claim or by the Bankruptcy Court upon motion of the Debtors, or after the Effective Date, the Reorganized Debtors, without notice or a hearing. Nothing herein shall be construed to extend the Bar Date set forth in Section 4.2 of this Plan, the Bar Date for Administrative Claims set forth in Section 2.5 of this Plan or the Bar Date for Rejection Damages set forth in Section 8.3 of this Plan. Subject to Bankruptcy Court approval, objections to Claims may be litigated to judgment, settled or withdrawn. Distributions with respect to and on account of Claims to which objections have been filed will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order.

7.6.   **Disputed Claims Reserves**.   On and after the Effective Date, the Reorganized Debtors shall establish and maintain reserves for all Disputed Claims. For purposes of establishing a reserve, Cash will be set aside in the applicable deposit account equal to the amount that would have been distributed to the Holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date, or such other amount as may be approved by the Bankruptcy Court upon motion of the Reorganized Debtors.  If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Debtors to the Claimant. The balance of such Cash, if any remaining after all Disputed Claims have been resolved, shall be distributed Pro Rata to Holders of Claims entitled thereto in accordance with Article 4 of this Plan. No payments or Distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order.

7.7.   **Withholding Taxes**.   Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

7.8.   **Fractional Cents**.   Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole cent (up or down), with half cents or less being rounded down and fractions in excess of half a cent being rounded up.

7.9.   **Setoffs**.   Except as otherwise provided for herein, the Debtors, or after the Effective Date, the Reorganized Debtors, may, but shall not be required to, set off against any Claim and the Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or their Estates, either individually or collectively, may have against the Holder of such Claim, but neither the failure to do so nor the allowance of a Claim hereunder  shall constitute a waiver or release by the Debtors, the Reorganized Debtors or

the Estates of any Claim they may have against such creditor; provided that such right of setoff shall be subject to Sections 10.1 and 10.2 of this Plan and in no event shall the Debtors or the Reorganized Debtors set off, or be permitted to set off, against any Claims Allowed under this Plan.

7.10.  **Interest on Claims**.  Interest shall not accrue or be payable on Claims after the Effective Date, including on Disputed Claims, provided that interest may accrue and be payable on the New Secured Note, the Cash Collateral Note and the Cash Flow Note as provided in such documents.

7.11.  **Ordinary Course Liabilities**.  If not otherwise paid in full by the Debtors in the ordinary course of their businesses subsequent to the Petition Date, or fixed in amount by stipulation between the Debtors and each Holder prior to the Administrative Claims Bar Date, Holders of Claims against the Debtors for liabilities incurred after the Petition Date shall be required to File a request for payment of Administrative Claims not later than the Administrative Claims Bar Date.

7.12.  **Assumption of Obligations Under this Plan**.  On the Effective Date, the obligations to make the Distributions required by this Plan shall be assumed by the Reorganized Debtors, which shall have the obligation to make all Distributions as set forth herein.

## ARTICLE 8
## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

8.1.  **Contracts Deemed Rejected**.  Within sixty (60) days of the Effective Date, the Reorganized Debtors shall be authorized, without further order of the Bankruptcy Court, to assume or reject any of the executory contracts or unexpired leases set forth on **Exhibit E** hereto by giving thirty (30) days' prior written notice to the parties thereto, not later than the expiration of the foregoing 60-day period, by which such contract or lease shall be deemed assumed or rejected as the case may be.  The notice to the contract counterparty of any executory contract or unexpired lease to be assumed shall contain the Debtors' proposed cure amount for such contract or lease, which such cure amount shall be determined pursuant to agreement of the parties or by further order of the Court if no such agreement can be reached.  Any rejection damages arising pursuant to a notice of rejection shall constitute Class 8 Claims.  Except for the executory contracts and unexpired leases set forth on **Exhibit E** hereto, each executory contract or unexpired lease of the Debtors that has not expired by its own terms or been assumed prior to the Effective Date, shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Effective Date..

8.2.  **Postpetition Contracts and Leases**. All contracts and leases entered into by the Debtors after the Petition Date and remaining in effect on the Effective Date shall be deemed assigned to the Reorganized Debtors on the Effective Date.

8.3.  **Bar Date For Rejection Damages**. All proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court, within thirty (30) days of the Effective Date, except that such Claims arising under Sections 8.1 of the

Plan shall be filed with the Bankruptcy Court within thirty (30) days after the date the related executory contract or unexpired lease is deemed rejected thereunder. Any such proof of Claim that is not timely filed shall be released, discharged and forever barred from assertion against the Debtors, their Estates or Property, Purchaser or any Property acquired by Purchaser under the Purchase Agreement, including the Purchased Interests. All objections to such Claims shall be filed in accordance with Section 7.5 hereof.

## ARTICLE 9
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

9.1.    **Effective Date Conditions**. The Plan shall become effective (the "**Effective Date**"), when each of the following conditions has been satisfied:

(a)    The Bankruptcy Court shall have entered the Confirmation Order;

(b)    The Confirmation Order shall have become a Final Order;

(c)    The Lenders and the Reorganized Debtors shall have entered into (i) the New 1111(b)(2) Secured Note, and (ii) the New Credit Agreement;

(d)    The Reorganized Debtors shall have executed and delivered the Replacement Mortgage to the Lenders;

(e)    The purchase price for the New Equity shall have been paid, and the documents necessary for the operating infusion from the New Equity Purchaser shall have been executed as contemplated by Section 6.4 hereof;

(f)    If applicable, the New Equity Purchasers shall have made arrangements for the Contributed Allocation of the New Equity to be contributed one (1) business day after the Effective Date by the New Equity Purchaser for the benefit of Holders of Allowed Class 6 Claims electing treatment under Section 4.8(ii);

(g)    All other actions and documents necessary to implement this Plan as of the Effective Date shall have been effected or duly executed and delivered.

Unless the Effective Date is rescheduled at the election of the Debtors, the satisfaction of conditions (a) through (l) above shall take place within two (2) Business Days after the entry of the Confirmation Order.

9.2.    **Waiver of Conditions**. The Debtors, in their discretion, may at any time, but solely with the prior consent of the Agent in each instance, without notice or authorization of the Bankruptcy Court, waive any or all of the conditions set forth in Section 9.1 above, other than clause (a) thereof.  The Debtors, and after the Effective Date, the Reorganized Debtors, reserve the right to assert that any appeal from the Confirmation Order shall be moot after substantial consummation of this Plan.

9.3.    **Notice of Effective Date**. On or before ten (10) days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all known Holders of Claims,

Administrative Claims and parties to rejected executory contracts and unexpired leases a Notice that informs such Holders and parties of (a) entry of the Confirmation Order; (b) the occurrence of the Effective Date; and (c) such other matters as the Debtors deem to be appropriate.

## ARTICLE 10
## EFFECTS OF PLAN CONFIRMATION

10.1.  **Injunction.**  Pursuant to 28 U.S.C. §1651 and sections 105, 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code, and except as otherwise provided in this Plan, the Confirmation Order, or the Lien Resolution Procedures (or proceedings or orders entered pursuant to such Lien Resolution Procedures), on and after the Confirmation Date (subject to the occurrence of the Effective Date) all Persons and Entities, including, without limitation, each Holder of a Claim who votes in favor of this Plan, who accepts any Distributions pursuant to Article 4 of the Plan, or who does not object to this Section **Error! Reference source not found.** (each an "Accepting Holder"), who have held, hold or may hold Liens, Claims or Interests in or against the Debtors or Interests in the Debtors are, with respect to any such Liens, Claims or Interests, permanently enjoined from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors or any officer, director, member, shareholder, attorney, other professional or other representative of the Debtors or the Reorganized Debtors, or any of their property, (b) enforcing against, levying upon or attaching (including, without limitation, any pre-judgment attachment) the foregoing Persons and Entities, (c) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment) collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, any of their Property, (d) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Liens, Claims or Interests of any kind against or in the Debtors, the Reorganized Debtors, any of their Property, (e) asserting, maintaining or failing to withdraw any right of setoff, subordination, or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, the Reorganized Debtors, any of their Property, and (f) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of this Plan. Notwithstanding the foregoing, such Persons, Entities and Accepting Holders who have held, hold or may hold Liens, Claims or Interests in or against the Debtors or Interests in the Debtors shall not be conclusively deemed to have unconditionally waived, released and discharged, and shall not be permanently enjoined from initiating or continuing, any claim, action, employment of process, or any act to collect, offset, or recover, any and all claims, obligations, rights, Causes of Action and liabilities, whether based in tort, fraud, contract or otherwise, known or unknown, that they possessed, possess or may possess prior to the Effective Date, against any Person or Entity that is not a Releasee (as defined in Section 10.2 below).

10.2.  **Exculpation.**  Pursuant to 28 U.S.C. §1651 and sections 105, 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code, and except as otherwise provided in this Plan, the Confirmation Order, or the Lien Resolution Procedures (or proceedings or orders entered pursuant to such Lien Resolution Procedures), upon confirmation of this Plan (subject to the occurrence of the Effective Date) all Persons and Entities shall be conclusively deemed to have released each of the Debtors, the Reorganized Debtors or any officer, director, member,

shareholder, attorney, other professional or other representative of the Debtors or the Reorganized Debtors, the Estates or the Committee, and any of their respective past or present officers, directors, managers, members, employees, representatives, counsel, advisors, consultants or other agents, successors or assigns (each, a "Releasee" and collectively, the "Releasees") of and from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Cases or any prepetition events relating to the Debtors or their business, including, without limiting the generality of the foregoing, the negotiation, formulation and preparation of this Plan and the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of this Plan, the pursuit of the Adversary Proceeding Against the Lenders, the consummation of this Plan, the administration of this Plan or the property to be distributed under this Plan, whether before or after the Petition Date, except for acts or omissions that constitute actual fraud or criminal conduct under any applicable statute, as determined in a Final Order, and all such Releasees, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan and under the Bankruptcy Code and Bankruptcy Rules. Notwithstanding this Section 10.2, the Parties in these Chapter 11 cases shall remain bound by the terms and provisions of the Court's orders entered in these Chapter 11 cases, as applicable.

10.3.   **Debtors' Release and Injunction.**  Pursuant to 28 U.S.C. §1651 and sections 105, 1123(b)(3) and 1123(b)(6) of the Bankruptcy Code, and except as otherwise provided in this Plan (including the treatment of the Adversary Proceeding Against the Lenders, which shall not be affected by or subject to this Section 10.3), the Confirmation Order, or the Lien Resolution Procedures (or proceedings or orders entered pursuant to such Lien Resolution Procedures), upon confirmation of this Plan (subject to the occurrence of the Effective Date), each of the Debtors or any officer, director, member, employee, shareholder, attorney, other professional or other representative of the Debtors or the Reorganized Debtors on their own behalf, as the Reorganized Debtors and as the representative of the Debtors' Estates, shall be deemed to have waived, released and discharged, and shall be permanently enjoined from initiating or continuing, any claim, action, employment of process, or any act to collect, offset, or recover, any and all claims, obligations, rights, Causes of Action, Avoidance Actions and liabilities, whether based in tort, fraud, contract or otherwise, known or unknown, that they possessed, possess or may possess prior to the Effective Date, and whether arising before or after the Petition Date, against Releasees, or any of their respective past or present officers, directors, managers, members, employees, representatives, counsel, advisors, consultants or other agents, successors or assigns, and that arise from or are related to such Claims or Interests, including without limitation, with respect to derivative claims, provided that the foregoing release shall not apply to any action or omission that constitutes actual fraud or criminal conduct under any applicable statute.   Claims against the Lenders including, without limitation, Claims under section 506(c) of the Bankruptcy Code, shall not be released, enjoined, or otherwise affected by this Section 10.3, and all such Claims shall be vested in the Reorganized Debtors as the representative of the Estate.

10.4.   **Discharge of Claims; Termination of Equity Interests And Rights.**  Except as otherwise provided in this Plan, the Confirmation Order, or the Lien Resolution Procedures (or proceedings or orders entered pursuant to such Lien Resolution Procedures), pursuant to Section 1141(d)(1) of the Bankruptcy Code, all Claims against the Debtors or the Reorganized Debtors arising before the entry of the Confirmation Order shall be discharged as of the Effective Date,

regardless of whether the Holder of the Claim or any other Person filed a proof of claim based on the debt, and whether or not a Claim is allowed under section 5.02 of the Bankruptcy Code or whether the Holder of the Claim has accepted this Plan.  Nonetheless, as of the Effective Date, the rights and interests of all equity security holders with respect to the Kirk Interests shall remain in effect and shall be deemed to constitute Interests in the Reorganized Kirk to the extent provided in the New Stock Ownership Agreement.  In addition, the membership interests owned by Kirk shall remain in full force and effect: Affiliate Debtors' Interests and Kirk's interests in non-debtor affiliates of Kirk shall remain in effect and in force and shall not be terminated, but shall be deemed vested in and transferred and assigned to the Reorganized Kirk as of the Effective Date.

10.5.    **Reservation of Rights**. Notwithstanding any term or provision thereof to the contrary, nothing contained in Sections 10.1 through 10.4 hereof shall be deemed to be a waiver or release of any of the rights or obligations of any of the Holders of Claims under the other terms and provisions of this Plan or the Confirmation Order.

10.6.    **Term of Injunctions and Stays**. Unless otherwise provided herein or in the relevant orders applicable thereto, all injunctions or stays provided for in any adversary proceeding or the Chapter 11 Cases and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date, whereupon the discharge and permanent injunctions set forth in this Plan and in the Confirmation Order shall take effect.

10.7.    **Compromises and Settlements**. After the Effective Date, the Reorganized Debtors may compromise and settle any Claims, or any claims against others, without approval of the Bankruptcy Court.

## ARTICLE 11
## RETENTION OF JURISDICTION

11.1.    **Retained Jurisdiction after Confirmation**. Following the Confirmation Date and until such time as all payments and Distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by Debtors initiated in the Bankruptcy Court are resolved, the Bankruptcy Court shall retain sole jurisdiction to the full extent that retention thereof is legally permissible, including, without limitation, for the following purposes:

(a)    **Claims**.    To determine the amount, allowability, allocability, classification, or priority of Claims against the Debtors, including (without limitation) rejection claims arising pursuant to section 502(g) of the Bankruptcy Code, upon motion or upon objection to any Claim by the Debtors or any other party in interest;

(b)    **Claims Estimation**.    To estimate Claims for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code, including (without limitation) estimation of Claims of Customers asserting setoff or rights of recoupment against amounts owed to the Debtors;

(c)    **Injunction, etc**. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or its

execution or implementation by any Person, to construe and to take any other action to enforce and execute this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of this Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Person or Entity;

(d) **Professional Fees**.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, as provided for in this Plan;

(e) **Certain Priority Claims**.  To determine any Priority Tax Claims, Priority Claims, Administrative Claims or any requests for payment of Administrative Claims;

(f) **Lien Resolution Proceedings**.  To make determinations of Liens pursuant to the Lien Resolution Proceedings, including, without limitation, determination of Liens pertaining to existing Homes, the sales of which close after the Effective Date;

(g) **Dispute Resolution**.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of this Plan and the making of Distributions thereunder, including, without limitation, any dispute concerning payment of Professional Fees and expenses;

(h) **The Exchange Transaction**.  To approve any Exchange Transaction, and resolve any dispute relating to the documentation or consummation of that transaction;

(i) **Unexpired Leases and Executory Contracts**.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases or cure Claims resulting from the assumption of executory contracts and unexpired leases;

(j) **Claims Against the Lenders**.  To determine the Adversary Proceeding Against the Lenders, and any and all other Claims Against the Lenders, including, without limitation, all surcharge Claims arising under section 506(c) of the Bankruptcy Code;

(k) **Actions**.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Chapter 11 Cases, except any action in which the Debtors are a plaintiff in any state or federal court (other than the Bankruptcy Court) as of the Effective Date;

(l) **363 Sales**.  To hear and determine motions by the Reorganized Debtors to sell assets of the Estate pursuant to section 363 of the Bankruptcy Code and all issues and contested matters relating thereto;

(m) **General Matters**.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order as may be authorized under provisions of the Bankruptcy Code;

(n)    **Plan Modification**.  To modify this Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order so as to carry out its intent and purposes;

(o)    **Deadlines**.  To extend any deadline, timetable or timeline set forth in the Plan upon the filing of a motion by any party in interest;

(p)    **Aid Consummation**.  To issue such orders in aid of consummation of this Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(q)    **Implementation of Confirmation Order**.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; and

(r)    **Final Order**.    To enter a Final Order confirming substantial consummation of the Plan and closing the Chapter 11 Cases.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1.  **Pre-Confirmation Modification**.    This Plan may be altered, amended or modified by the Debtors before the Confirmation Date as provided in section 1127 of the Bankruptcy Code, but only with the prior written consent of the Agent in each instance and, if such proposed alteration, amendment, or modification involves any matter impacting Class 3 Claims in any way or the provisions of this Section 12.1 are modified, the Committee.

12.2.  **Post-Confirmation Immaterial Modification**.    The Debtors may, with the approval of the Bankruptcy Court and with the prior written consent of the Agent in each instance (and of the Committee if such correction of a defect, omission, or inconsistency in the Plan involves any matter impacting the provisions of this Section 12.2 are modified), and without notice to all other Holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

12.3.  **Post-Confirmation Material Modification**.    This Plan may, with the prior written consent of the Agent in each instance (and of the Committee if such proposed alteration or amendment involves any matter impacting the provisions of this Section 12.3 are modified), be altered or amended after the Confirmation Date by the Debtors in a manner that, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, provided that such alteration or modification is made after a hearing as provided in section 1127 of the Bankruptcy Code.

12.4.  **Withdrawal or Revocation of this Plan**.  The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtors revoke or withdraw this Plan, then the result shall be the same as if the  Confirmation Order had not been entered and the Effective Date had not occurred.

12.5.  **Payment of Statutory Fees**.  All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date or from assets of the Debtors or the Reorganized Debtors when otherwise due.

12.6.  **Continued Existence of Committee**.  The Committee shall continue to exist following the Effective Date and shall be empowered, to the extent reasonable and appropriate, to object to the allowance of Claims, commence certain litigation against third parties pursuant to section 549 of the Bankruptcy Code (in the event that the Reorganized Debtors opt not to proceed with such litigation), and generally monitor the consummation and implementation of the Plan and the Distributions to made thereunder; provided, however, that prior to the payment of any fees or expenses incurred by the Committee following the Effective Date, the Debtors shall have ten (10) days following receipt of the Committee's invoices to object to the reasonableness or appropriateness of the fees and expenses incurred and whether the activity for which payment is sought is necessary.

12.7.  **Successors and Assigns**.  The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors or assigns of such Entities.

12.8.  **Governing Law**.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

12.9.  **Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

>               The Kirk Corporation
>               21 Juniper Circle
>               Streamwood, Illinois 60107
>               Attn:   John Carroll

with a copy to Debtor's Counsel:

>               Meltzer, Purtill & Stelle LLC
>               300 South Wacker Drive, Suite 3500
>               Chicago, Illinois 606006
>               Attn:   Forrest B. Lammiman
>                       David L. Kane

with a copy to Agent's Counsel:

>               Duane Morris LLP
>               190 South LaSalle Street, Suite 3700
>               Chicago, Illinois 60603-3433
>               Attn:   Joel M. Walker

{05919: 210: 00476114.DOC : }                    31

Rosanne Ciambrone

with a copy to Committee's Counsel:

> Crane, Heyman, Simon, Welch & Clar
> 135 South LaSalle Street, Suite 3705
> Chicago, Illinois 60603
> Attn:   David K. Welch
>             Jeffrey C. Dan

12.10. **Saturday, Sunday or Legal Holiday**.  If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.11. **Section 1146 Exemption**.  Pursuant to section 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, this Plan or the revesting, transfer or sale of any real or personal  property of the Debtors pursuant to, in implementation of, or as contemplated by, this Plan, shall not and may not be taxed under any state or local law imposing a stamp tax, transfer tax, sales tax or similar tax or fee.

12.12. **Severability**.  If any term or provision of this Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan may, at the Debtors' option remain in full force and effect and not be deemed affected. However, the Debtors reserve the right not to proceed to Confirmation or consummation of this Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.13. **Headings**.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

[Signature page follows]

Dated: September 18, 2009                    Respectfully submitted,


                                             **THE KIRK CORPORATION**

                                             By:  ___/s/ John Carroll_____
                                             Its:  President and Chief Executive Officer

                                             - and-

                                             **APPLE CREEK ESTATES, LLC; BEACON
                                             POINTE WEST, LLC; BLOOMFIELD
                                             ESTATES, LLC; LAUREL MEADOW, L.L.C.;
                                             THE LINDENS VENTURE, L.L.C.;
                                             ROCKWELL PLACE, LLC; STONEGATE
                                             VILLAGE, LLC; WING POINTE NORTH,
                                             L.L.C; WESTLAND, LLC; BLOOMFIELD
                                             WEST, L.L.C.; AND FREEMAN ROAD
                                             DEVELOPMENT, LLC**

                                             By:  ___/s/ John Carroll_____
                                             Its:  President and Chief Executive Officer of
                                                  The Kirk Corporation, Member



                                             By:  _/s/ Forrest B. Lammiman_____
                                                  One of Their Attorneys

                                             Forrest B. Lammiman (ARDC No. 6208632)
                                             David L. Kane (ARDC No. 6277758)
                                             MELTZER, PURTILL & STELLE LLC
                                             300 South Wacker Drive, Suite 3500
                                             Chicago, Illinois 60606
                                             (312) 987-9900
                                             (312) 987-9854 (facsimile)

# DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION

## <u>LIST OF EXHIBITS</u>

**Exhibit A**:     Homes Subject to Inventory Transitions Procedures

**Exhibit B**:     New 1111(b)(2) Note

**Exhibit C**:     New Credit Agreement

**Exhibit D**:     Replacement Mortgage

**Exhibit E**:     Executory Contracts and Unexpired Leases

**Exhibit F**:     Schedule of Minimum Lot Release Payments

{05919: 210: 00476114.DOC : }

# DEBTORS' FOURTH AMENDED PLAN OF REORGANIZATION

## LIST OF EXHIBITS

**Exhibit A**:     Homes Subject to Inventory Transitions Procedures

**Exhibit B**:     New 1111(b)(2) Note

**Exhibit C**:     New Credit Agreement

**Exhibit D**:     Replacement Mortgage

**Exhibit E**:     Executory Contracts and Unexpired Leases

**Exhibit F**:     Schedule of Minimum Lot Release Payments

{05919: 210: 00476114.DOC : }